UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI #175762,

     Plaintiff,                    NO. 1:21-cv-71

v                             HON. HALA Y. JARBOU

STEVE ADAMSON, DAVID LEACH,     MAG. PHILLIP J. GREEN
and SHANE JACKSON,

     Defendants.
_____

Fathiree Ali #175762
*In Pro Per*
Saginaw Correctional Facility
9625 Pierce Rd.
Freeland, MI  48623

Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants
Mich. Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
Fosterj15@michigan.gov
_____/


**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants Adamson,
Leach, and Jackson
Corrections Division
P.O. Box 30217
Lansing, MI  48909
517-335-3055
Fosterj15@michigan.gov

Dated:  September 5, 2023

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Under both 42 U.S.C. §1983 and RLUIPA, personal involvement in the alleged wrongdoing is required to establish liability.  Should this court grant Defendants summary judgment on all individual and official capacity claims because Plaintiff has not established personal involvement in any constitutional or statutory violation?

2.      To establish an equal protection claim, Plaintiff must show that he is similarly situated to the other individuals in every material way.  Should this Court grant Defendants summary judgment because Plaintiff has failed to establish the necessary showing?

3.      Qualified immunity protects officials who carry out discretionary decision-making authority unless they knowingly violate the law.  Should this Court grant Defendants qualified immunity, either because there was no constitutional violation or, existing law at the time would not have provided notice beyond debate, that using the Plaintiff's interview answers and other supporting documentation to reasonably deny a vegan meal request would violate any constitutional right?

4.      RLUIPA was enacted to prevent government agencies from imposing a substantial burden on prisoners' religious rights, but it was not intended to eliminate all religious restrictions.  Should this Court grant Defendants' motion for summary judgment because Plaintiff has failed to demonstrate that Defendants substantially burdened his religious beliefs?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

_Authority_:    Fed. R. Civ. P 56

i

## STATEMENT OF FACTS

Plaintiff, Fathiree Ali #175762, is currently a prisoner confined with the Michigan Department of Corrections (MDOC), at the Saginaw Correctional Facility.[1]  Plaintiff filed a lawsuit alleging retired MDOC officials, Warden Jackson, Chaplain Adamson, and Special Activities Coordinator Leach all violated his constitutional and statutory rights by denying him access to a halal diet that includes halal meat.  (Compl., ECF No. 1, PageID.1–8.)  After this Court's screening opinion, Plaintiff's First Amendment Free Exercise claim, Fourteenth Amendment equal protection Claim, and Religious Land Use and Institutionalized Persons Act (RLUIPA) claim remain.  (Op., ECF No. 7, PageID.42–43.)  All the same factual allegations in Plaintiff's complaint were incorporated into each of his three claims and thus, the same set of facts apply to each allegation.  (Compl., ECF No. 1, PageID.3–8.)

The MDOC houses inmates of many religions, but with limited space and resources, it instituted a religious meals program that would meet the needs of many religions by providing all inmates at all facilities, with a non-meat entrée option — a vegetarian plate.  (Ex. A, PD 04.07.100, ¶ H; Ex. B, PD 05.03.150, ¶ NN.)  Religious meals are mainly governed by Policy Directive 05.03.150 "Religious Beliefs and Practices of Prisoners."  (Ex. B, PD 05.03.150, eff. 01/22/2015.)  The

---

[1] Michigan Department of Corrections, Offender Tracking Information System, website, profile Fahiree Ali 175762, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=175762. (Last accessed 8/24/2023.)

MDOC posts the regular meal menus at least a week in advance so inmates can review the meals and determine which items they choose to avoid based on their religious beliefs.  (*Id*. at ¶ NN.)  For those inmates who feel the vegetarian plate does not meet their religious needs, they may request access to vegan meals by seeking approval from the CFA Special Activities Coordinator.  (*Id*. at ¶ PP.)

"To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator."  (*Id*.)  The CFA Special Activities Coordinator then considers the request and other provided documentation before making a decision.  (*Id*.)  Then, officials at the facility receive notice of the decision and inform the prisoner of that decision.  (*Id*.)  Prisoners may not eat from the vegan menu, unless approved by the CFA Special Activities Coordinator and approval is only granted if necessary. (*Id*.)

If a prisoner believes the vegan menu does not adhere to their religious beliefs, the prisoner can request an alternate religious menu.  (*Id*., ¶ OO.)  "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner."  (*Id*.)  Prisoners can request an alternate religious menu at any time.  (Ex. C, Aff. Leach, ¶ 20.)

Plaintiff has been confined with the MDOC for 34 years.[2]  During his deposition, Plaintiff testified that upon his incarceration in 1989, he reembraced the

---

[2] *Id*.

Muslim faith he was introduced to as a child and has "been Muslim the duration of those 34 years[.]" (Ex. D, Dep. Tr., 11:15–16, 22–25.)  Plaintiff officially designated Muslim as his religious affiliation on February 11, 2002.  (Ex. E, Religious History.) Fifteen years later, on September 25, 2017, Plaintiff sent a kite that said, "Please place me on the Halal line."  (Ex. F, Interview Packet, p. 6.)  As a result of this kite, Plaintiff filled out a Religious Meal Interview form (CAJ-1016), a Religious Meal Participation Agreement (CAJ-1013) and was interviewed by Chaplain Adamson. (*Id.*, p. 3–4.)  During his interview Plaintiff said, among other things, "[t]he foods MUST be halal."  (*Id.*, ¶ 5, p. 3.)  "The foods and drinks are cross-contaminated by the non-halal items."  (*Id.*, ¶ 6, p. 4.)  "I am not eating the meals and therefore not getting the proper daily nutrition as a result of avoiding unlawful meats and cross-contaminated trays/meals/foods."  (*Id.*, ¶ 7.)  After the interview, Chaplain Adamson filled out the Religious Meal Interview Report and Recommendation (CAJ-1015) (*id.*, p. 1–2), and recommended that Plaintiff's request for vegan meals be approved. (*Id.*, p. 2.)  This process and the forms used were not the ones used to request an alternate menu (Ex. C, Aff. Leach, ¶ 9–10), but were the ones used to request approval for the vegan menu from the Special Activities Coordinator.  (*Id.*)

As the Special Activities Coordinator, Defendant Leach reviewed Plaintiff's interview forms, the recommendation from Defendant Chaplain Adamson, and Plaintiff's commissary purchases.  (*Id.*, ¶¶ 9, 13.)  Defendant Leach determined that Plaintiff was purchasing items from the commissary that were not halal, which was contrary to his interview responses and Defendant Leach denied Plaintiff's request

for vegan meals.  (*Id.*, ¶ 13.)  Defendant Adamson received notice of the denial and informed Plaintiff of the decision.  (Ex. G, Aff. Adamson, ¶ 11.)  Plaintiff then wrote a grievance and claimed to be a class member of the *Dowdy-El v. Caruso*, settlement agreement.  (Compl. Ex. A, ECF No. 1-1, PageID.11.)  He claimed he "requested a halal diet due to Trinity's Food Corp and its supervisor's Town's failure to train and maintain sanitary conditions in proper food handling, preparation and servings of haram food."  (*Id.*)  Plaintiff went on to say, "state and federal law clearly establish and recognize that Muslims are entitled to receive halal meals" and his religious practices has [sic] been substantially burdened by . . . failing to provide and make available meals consistent with [his] beliefs."  (*Id.*)  The grievance response shows Chaplain Adamson interviewed Plaintiff on "9/25/17 . . . per his request to be accommodated with the Religious (Vegan) meal program."  (*Id.*, PageID.12.)  "The results of the interview were then submitted to the Special Activities Coordinator who subsequently denied the request.  Chaplain Adamson wrote a memo to [Plaintiff] regarding his denial on 10/10/2017."

Since the request in September 2017, Plaintiff has never again requested a vegan meal and has never requested access to an alternative religious menu.  (Ex. H, Aff. Dirschell, ¶ 5–7.)

4

## ARGUMENT

**I.  Plaintiff failed to demonstrate personal involvement by Defendants, in either a § 1983 or RLUIPA claim and, thus, all official and individual claims against Defendants should be dismissed.**

For Defendants to be held liable, Plaintiff must first establish a violation of a constitutional or statutory right or Plaintiff cannot prevail on his claim. *Graham v. Connor*, 490 U.S. 386, 393 (1989).  Additionally, the Plaintiff must make a clear showing that Defendants were personally involved in the activity that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir., July 22, 2002).

### A.  All Defendants are grouped together without specific allegations of misconduct.

Fed. R. Civ. P. 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The intent is to provide Defendants with fair notice of Plaintiff's claims "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012). "Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal." *Id*.

Throughout Plaintiff's complaint, the Defendants are all lumped together as if each one always took the exact same actions.  (Compl., ECF No. 1, PageID.1–8.)

5

Case 1:21-cv-00071-HYJ-PJG   ECF No. 33,  PageID.135   Filed 09/05/23   Page 8 of 30

**Allegations against Defendant Jackson**

Defendant Jackson is mentioned as a party to Plaintiff's complaint.  "Shane
Jackson is the warden at Carson.  In this capacity, defendant, among other duties,
oversees the duties of the chaplain.  Defendant is sued in both his individual and
official capacities."  (*Id.*, ¶ 8, PageID.3.)  This is the only time Defendant Jackson's
name appears in the complaint.  (See generally *Id.*, PageID.1–8.)  Plaintiff has not
made any specific allegations of constitutional or statutory misconduct against
Defendant Jackson and Defendant Jackson should be dismissed.

Based on the same paragraph, it appears that Plaintiff sued Defendant
Jackson because in his "capacity defendant, among other duties, oversees the duties
of the chaplain."  (*Id.*, ¶ 8, PageID.3.)  To the degree that Plaintiff intended to sue
Defendant Warden Jackson based on his position at the prison, Plaintiff's complaint
fails.  There is no liability based upon a theory of respondeat superior, *Polk County
v. Dodson*, 454 U.S. 312, 325 (1981), and even the combination of knowledge of a
prisoner's grievance and failure to remedy the complaint is insufficient to impose
liability upon supervisory personnel under § 1983.  *Poe v. Hayden*, 853 F. 2d 418,
429 (6th Cir. 1988).  For this reason, again, Defendant Jackson should be dismissed.

**Allegations against Defendant Adamson**

Like Defendant Jackson, Defendant Adamson is mentioned as a party to
Plaintiff's complaint.  (Compl., ECF No. 1, ¶ 7, PageID.2.)  The only other place in
the complaint where Defendant Adamson's name is mentioned, is paragraph 21.
"Adamson interviewed Ali, administered a 'faith test' and submitted his

recommendation with Defendant Leach." (*Id.*, ¶ 21, PageID.4.)  This comports with the grievance response Plaintiff submitted with his complaint.  (Compl. Ex. A, ECF No. 1-1, PageID.12.)  "Chaplain Adamson interviewed [Plaintiff] per his request to be accommodated with the Religious (Vegan) meal program," and submitted the interview to the "Special Activities Coordinator who subsequently denied the request." (*Id.*)  Plaintiff's complaint does not contain any specific allegations of constitutional or statutory misconduct by Defendant Adamson.  (See generally, Compl., ECF No. 1, PageID.1–8.)  Although Plaintiff does state, "defendant, among other duties, must approve all request for a special diet based upon religious beliefs before such diet will be provided to any prisoner at Carson." (*Id.*, ¶ 7, PageID.2.) Plaintiff is mistaken.

Chaplain Adamson was not the decision maker but conducted an interview and recommended Plaintiff's request be approved.  (Ex. F, Interview Packet, p. 2.) This fact was pointed out to Plaintiff during his deposition and Plaintiff was asked whether he would be willing to dismiss Defendant Adamson because according to MDOC policy Adamson was not the decision-maker and, Adamson recommended approval.  (Ex. D, Dep. Tr., 34:21–24; 35:23–25; 36:1–37:10, 23; 38:8–39:25.) Plaintiff declined to dismiss Adamson.  "I can't dismiss him from the case, because even after the denial, he continued to deny me access to a meal." (*Id.*, 39:18–19.) MDOC Policy did not give Chaplain Adamson authority to approve access to the vegan menu.  (Ex. B, PD 05.03.150, ¶ PP.)  Only the Special Activities Coordinator could make that decision.  (*Id.*)

Because Plaintiff failed to allege any specific constitutional or statutory misconduct by Defendant Adamson, and Defendant Adamson was not personally involved in the conduct that forms the basis of Plaintiff's complaint, Defendant Adamson should be dismissed from this case for lack of personal involvement.

**Allegations against Defendant Leach**

Defendant Leach is named as a Defendant in Plaintiff's complaint, as "a member of the Christian faith and employed as the Special Activities Coordinator. In this capacity, among other duties, he maintains religious practices in the MDOC." (Compl., ECF No. 1, ¶ 9, PageID.3.)  The only other time Leach is mentioned in the complaint is paragraph 21.  "Adamson interviewed Ali, administered a "faith test" and submitted his recommendation with Defendant Leach." (*Id*., ¶ 21, PageID.4.)  This does not state a constitutional or statutory violation and Defendant Leach is not found anywhere else in the body of the complaint.  For this reason, Defendant Leach should be dismissed from this case, for failure to allege personal involvement in the conduct that forms the basis of the complaint.  It is insufficient for Plaintiff to collectively name Defendants for every action, but that is the substance of Plaintiff's complaint and Defendants should be dismissed.

**B.    None of the named Defendants can grant the relief Plaintiff seeks — access to an alternate religious diet with halal meat.**

As damages in this lawsuit, Plaintiff seeks a declaratory ruling against Defendants' conduct, a "preliminary and permanent injunction, without bond,

requiring defendant to approve Ali's request for a halaal [sic] diet;" and financial compensation. (*Id.*, ¶ (a)–(e), PageID.8.)  Plaintiff alleges "Defendants denied [him] his request to receive a halaal [sic] meal[.]" (*Id.*, ¶ 22, PageID.5.)  It is true that Plaintiff's request for access to the vegan menu was denied, however, that is not the meal Plaintiff is requesting as part of this lawsuit.  Plaintiff says he cannot "exclude eating halaal [sic] meats from his diet." (Compl., ECF No. 1, ¶ 15, PageID.4.)

It is well-known that prisoners have a right to receive "an adequate diet without violating the inmate's religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010).  However, as the Sixth Circuit determined in *Alexander v. Carrick*, "this is essentially a constitutional right not to eat the offending food item." 31 F. App'x 176, 179 (6th Cir. 2002).  At every prison, the MDOC offers two meal options, the regular diet menu, and a non-meat entrée (a vegetarian plate) for inmates who wish to abstain from eating meat for religious, or any other reason.  (R. 36-11, ¶ NN, PageID.368.)  For many religious groups, the vegetarian option is sufficient to meet their religious beliefs and the Courts have upheld MDOC's policy that places restrictions on vegan meal requests or removes prisoners from the meal program who violate the rules.

In *Hudson v. Caruso*, the inmates tried to claim that the MDOC policy regulating Halal food violated their constitutional rights.  748 F. Supp. 2d 721 (W.D. Mich. 2010).  The court recognized that "the cost of halal entrees is . . . ten times as expensive as vegetarian entrees." *Id.* at 729.  MDOC already provides every prisoner with a vegetarian option, or as set forth in policy, the option to

supplement their diets by purchasing food items from the prison store.   (R. 36-11, ¶XX, PageID.369.)  Even Muslim inmates have the ability to self-select foods that will not violate the tenants of their religion.  *Hudson*, 748 F. Supp. 2d at 729.  The court in *Hudson* ruled that "MDOC's policy directives and guidelines … withstand a constitutional challenge."  *Id*.  It does not matter if the MDOC's policy makes the religious "exercise more expensive or difficult," Plaintiff still has options to meet his own religious needs.  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).  Additionally, the Sixth Circuit has considered arguments about the vegetarian option and stated, "[w]e have explicitly held that vegetarian meals are, in fact, Halal."  *Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015).

Based on this finding, Plaintiff already has access to what he ultimately requested, a "halal diet," (Compl., ECF No. 1, ¶ (b), PageID.8.)  But careful review of Plaintiff's complaint shows in this lawsuit, he is not simply requesting a halal diet, Plaintiff says he cannot "exclude eating halaal [sic] meats from his diet."  (*Id*., ¶ 15, PageID.4.)  But the MDOC does not serve halal meats with any of the available religious diets and as Plaintiff clarified during his deposition, "[t]he alternate meal is what is really needed."  (Ex. D, Dep. Tr., 53:23.)  An alternate meal request was not what was processed in September 2017.  (Ex. C, Aff. Leach, ¶ 10.)  Plaintiff was interviewed for the vegan menu.  (*Id*.)  This fact and some additional clues become evident by reviewing Plaintiff's grievance.

In his grievance, written on October 21, 2017, Plaintiff claimed to be "a class member of the Dowdy-El v. Caruso, 2013 US Dist Lexis 73612, settlement agreement." (Compl. Ex. A, ECF No. 1-1, PageID.11.)  Plaintiff "requested a halal diet due to Trinity's Food Corp and its supervisor's Town's failure to train and maintain sanitary conditions in proper food handling, preparation and servings of haram food." (*Id.*)  He then blamed "MDOC's Special Acts Coord., Warden Jackson, Trinity and Chaplain Adamson" for "failing to provide and make available meals consistent with [his] beliefs." (*Id.*)  In response to this grievance it says,

> On 9/25/17, Chaplain Adamson interviewed Mr. Ali per his request to be accommodated with the Religious (Vegan) meal program. The results of the interview were then submitted to the Special Activities Coordinator who subsequently denied the request.  Chaplain Adamson wrote a memo to Mr. Ali regarding his denial on 10/10/2017. Mr. Ali's request was processed per policy.

(*Id.*, PageID.12.)

Plaintiff's request in September 2017, was not for an alternate religious menu, it was for the vegan menu. (*Id.*)  The reference to the *Dowdy-El v. Caruso* settlement agreement (*Id.*, PageID.11) produces the same conclusion.  In *Dowdy-El v. Caruso*, Muslim prisoners sued, in part, to receive a halal diet.  According to the settlement agreement, "[t]he *halal* diet that will be provided is a vegan meal . . . and is intended to comply with all religious dietary restrictions, including Kosher." *Dowdy-El v. Caruso*, No. 06-11765, 2013 WL 6094695, at *1 (E.D. Mich. Nov. 20, 2013).  To the extent Plaintiff claims to be part of that class, he is claiming the MDOC must provide vegan meals — which it does.  (Ex. B, PD 05.03.150, ¶ PP.)  But declaring yourself part of a class does not mean you automatically get the

11

benefit of the meals that the MDOC agreed to make available as part of this
settlement agreement.

In this lawsuit, Plaintiff is currently suing for something that he never asked
the MDOC to provide — an alternate religious diet with halal meat.  Plaintiff has
never requested an alternative menu accommodation and has never again
requested access to the vegan menu (Ex. H, Aff. Dirschell, ¶ 5–7), nor was halal
meat part of the *Dowdy-El v. Caruso* settlement agreement.  "Many class members
object to having to eat a vegan meal as opposed to religious meal with meat.  These
objections do not carry the day . . .  'Defendants are not bound to serve any specific
religious meal/menu . . .'  The issue in this case was whether the MDOC was
providing a halal meal.  . . . How it provides such a halal meal (i.e., whether it
provides for halal meat or not) was not a part of the settlement.  In other words,
while a prisoner has a right to a meal that meets religious restrictions, they do not
necessarily have a right to a meal which provides meat." *Dowdy-El*, No. 06-11765,
at *2.  Moreover, none of the named Defendants can approve a request for an
alternate religious menu, only the CFA Deputy Director can approve that kind of
request; but the CFA Deputy Director was never asked for an alternate menu
accommodation (Ex. H, Aff. Dirschell, ¶ 7) and is not a Defendant in this case.

Because Plaintiff alleges that his constitutional and statutory rights were all
violated on the same set of facts, and because Plaintiff alleges those rights were
violated by failing to provide him with an alternate religious diet that contains
halal meat, but none of the Defendants did or can consider and approve that kind of

request, Plaintiff cannot prove any personal involvement by any Defendant in violating a constitutional or statutory right and all Defendants should be dismissed as to all claims.

## II.   Plaintiff fails to state an equal protection claim as a matter of law.

The Equal Protection Clause says, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV § 1.  This is a mandate, "that all persons similarly situated should be treated alike." *Robinson*, 615 F. App'x at 314 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).)  Plaintiff must show that he was "similarly situated in all material respects." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 836 (6th Cir.2009).  To be similarly situated, Plaintiff "must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  Furthermore, the courts have concluded that Plaintiff must prove Defendants "intentionally discriminated against him and that their behavior was motivated by purposeful discrimination." *Abdullah v. Fard*, 173 F.3d 854 (6th Cir. 1999).  Plaintiff cannot make these showings.

Plaintiff's complaint correctly identifies the three different meals available within the MDOC, the "'regular' menu, 'vegetarian' menu, and a vegan menu." (Compl., ECF No. 1, ¶ 17, PageID.4.)  Plaintiff says "[d]ozens of prisoners, including new intakes, who request a vegan diet, are approved and receive the vegan diet at

13

each meal." (*Id.*, ¶ 19.)  According to Plaintiff, it is not just these "dozen" but "without limitation, Jewish, Christians, and Buddhist sects, are all granted diets such that they can practice their religion." (*Id.*, ¶ 41, PageID.7.)  "Of course, to establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019).

Plaintiff believes that Defendants "refusal to approve such diets for unadulterated Qur'aan & Sunnah prisoners, violates the Equal Protection clause of the Fourteenth Amendment[.]" (*Id.*, ¶ 43.)  Plaintiff's conclusory statement that "all" are granted diets that comply with their religious beliefs is a vast overstatement belied by the quantity of lawsuits filed regarding religious meal requests, but nothing in Plaintiff's complaint, establishes how he is similarly situated in all material respects to those prisoners who were granted access to the vegan menu. Every prisoner who requests access to religious meals, beyond the vegetarian plate, participates in an interview at the facility.  (Ex. B, PD 05.03.150, ¶ PP.)  The prisoner's request, interview responses, commissary purchases and a recommendation from the Chaplain are all sent to and considered by the Special Activities Coordinator who is not assigned to the facility and makes a decision based on documentation.  (See generally Ex. C, Aff. Leach.)

Plaintiff's request for vegan meals was denied because despite his claim that he skips meals and suffers malnutrition to avoid unlawful foods (Ex. F, Interview Packet, ¶ 5–6, p. 3–4), he was purchasing non-halal foods from the prisoner

commissary.  (Ex. C, Aff. Leach, ¶ 13–16.)  This behavior consistently leads to denial of prisoners' religious meal requests.  See *Miles v. Michigan Dep't of Corr.*, No. 1:18-CV-352, 2019 WL 5273955, at *3 (W.D. Mich. Aug. 1, 2019) (stating "Leach denied plaintiff's request to be placed on the religious meal plan because the food items he was purchasing from the prison store conflicted with his stated religious dietary requirements");  *Perreault v. Michigan Dep't of Corr.*, No. 1:16-CV-1447, 2018 WL 3640356, at *3 (W.D. Mich. Aug. 1, 2018) (stating "Leach based his decisions on the fact that Plaintiff was contemporaneously purchasing food items which were inconsistent with the religious meal accommodation he was requesting"); *O'Connor v. Leach*, No. 1:18-CV-977, 2020 WL 838084, at *3 (W.D. Mich. Jan. 27, 2020) (stating "Leach asserts that his decision was premised, in part, on Plaintiff's contemporaneous purchases of non-kosher food items.")

Rather than being treated differently from those similarly situated, Defendant Leach's decision was consistent with decisions he made for other prisoners who took the same actions.  Plaintiff's "equal protection claim boils down to the assertion that 'he was treated one way and everyone else [approved for the vegan meal was treated] another,' which 'has never been thought to raise an equal protection claim.'"  *Charles v. Baesler*, 910 F.2d 1349, 1357 (6th Cir. 1990) (quoting, *Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir.1985).)

Plaintiff also did not establish any facts constituting direct evidence of discriminatory motive or purpose by any of the named Defendants.  *Abdullah*, 173 F.3d 854.  Nor did Plaintiff establish that the decisionmaker acted with

15

discriminatory intent.  Plaintiff "must prove that the [decisionmaker] in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 279 (1987). Warden Jackson and Chaplain Adamson are not decisionmakers when it comes to religious meals.  Only the Special Activities Coordinator can make a decision regarding the vegan menu.  (Ex. B, PD 05.03.150, ¶ PP.)  Defendant Jackson was the Warden.  (Compl., ECF No. 1, ¶ 8, PageID.3.)  As a Warden, Defendant Jackson could "obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator."  (Ex. B, PD 05.03.150, ¶ PP.)  Defendant Jackson would also be responsible to "ensure that the prisoner is notified" of the decision.  (*Id.*)  In this case, Defendant Jackson did neither of those things, because Warden Jackson had Defendant Chaplain Adamson obtain information and notify Plaintiff of the determination.  (Compl., ECF No. 1, ¶ 21, PageID.4; Ex. G, Aff. Adamson, ¶¶ 7, 11.)  Defendant Adamson also made a recommendation to Defendant Leach (Ex. F, Interview Packet, p. 1–2), but per policy, was not the decisionmaker.  (Ex. B, PD 05.03.150, ¶ PP; Ex. G, Aff. Adamson, ¶ 10.)   This means, as established in section one above, they were not personally involved in the activity that forms the basis of Plaintiff's complaint and cannot be liable for an equal protection violation.

Only the Special Activities Coordinator is authorized to approve or deny religious meal accommodations for the vegan menu (Ex. B, PD 05.03.150, ¶ PP), and Plaintiff did not show how Leach acted with a discriminatory purpose. *Robinson*, 615 F. App'x at 314.  Additionally, because Plaintiff's complaint seeks an alternate

diet with halal meat, Defendant Leach cannot be liable for an equal protection claim because Defendant Leach was not a decisionmaker for alternate menu requests and Plaintiff never requested an alternate menu from the CFA Deputy Director.  (Ex. H, Aff. Dirschell, ¶ 5–7.)

Because Plaintiff did not provide facts showing he is similarly situated in all material respects to those prisoners who are approved for the vegan menu and he did not allege intentional and purposeful discrimination, Plaintiff's equal protection claim must fail and Defendants' motion for summary judgment should be granted.

**III.   When state officials make discretionary decisions during the course of employment, qualified immunity protects all but the plainly incompetent or those who knowingly violate the right.**

Qualified immunity "is not just a defense, but an immunity to suit for money damages." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Gomez v. Toledo*, 446 U.S. 635 (1980).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations omitted.)  Based on *Ashcroft*, existing precedent must have placed the constitutional question "beyond debate." 563 U.S. at 741.  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

17

distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, even if Defendant Leach's discretionary decision did violate the Plaintiff's right, Leach "would be entitled to qualified immunity [as long as his] decision was reasonable, even if mistaken." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

There is a two-prong test, and a district court must view the issue of qualified immunity in the specific context of each case. The Court can decide which of the two prongs of the analysis should be addressed first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. One prong requires the court to consider whether the facts of the case, viewed in the light most favorable to the plaintiff, show that a constitutional right was violated. *Saucier*, 533 U.S. at 201. The other prong requires the court to decide whether that right was clearly established, "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

In this case, the Plaintiff alleges that Defendants violated his First Amendment rights by refusing to approve a halal diet. (Compl., R. 1, ¶ 22, PageID.5.) As previously established, Plaintiff's request was treated as a request for the vegan menu. (See generally, Ex. C, Aff. Leach, Ex. G, Aff. Adamson.) Therefore, this Court must determine whether the Plaintiff has a constitutional right to be served a vegan diet in prison. If the answer is yes, the Court must also determine whether that right was clearly established, beyond debate. *Ashcroft*, 563 U.S. at 741.

18

### A. There is no First Amendment Right to a personalized diet in Prison.

A prisoner has the right to freely practice his religion and to show the court that this right has been violated. To make such a showing, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon his practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); see also, *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001). But just "because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520,545 (1979). See also, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The Supreme Court has clearly established that "[p]risoners must be provided reasonable opportunities to exercise their religious freedom, *Hudson v. Palmer*, 468 U.S. 517, 523 (1984), but the key word there is 'reasonable.'"

In Plaintiff's complaint, he explained that he wants a halal diet with halal meat. (Compl., R. 1, ¶ 15, PageID.4.) Plaintiff made very strong claims about his religious beliefs and the absolute need to avoid all food that was not halal or suffer "unforgivable sin." (*Id.*) Upon further review, Defendant Leach found that the Plaintiff's store purchases contained products that would violate his claimed religious dietary restrictions. (Ex. C, Aff. Leach, ¶ 13–16.) Thus, Plaintiff cannot prove at the time of the request for the vegan meal plan, that (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, or that (3) Defendant's behavior infringed upon his practice

19

or belief, because Plaintiff's own behavior contradicts his professed need to restrict his diet to only halal foods.  Plaintiff cannot prove that it was the Defendants' behavior that was inhibiting Plaintiff's ability to adhere to his proclaimed religious diet.  Thus, Plaintiff's claim of violation of his First Amendment right fails.

In that regard, Courts have determined that "[i]t is reasonable for prison officials to deny special religious diets to prisoners who consume **or purchase** food which is inconsistent with the requested religious diet… It is also well recognized that prison officials have a legitimate interest in maintaining discipline within the prison.  Permitting Plaintiff to participate in a religious diet program when he has a demonstrated history of consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions." *Perreault v. Mich. Dep't of Corr.*, No. 1:16-cv-1447, 2018 U.S. Dist. LEXIS 128461, at *8 (W.D. Mich. Aug. 1, 2018) (internal quotations omitted, emphasis added.)  See also, *Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009) ("Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison");  *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (the inmate complained that he was denied kosher meals, but failed to state a violation under the First Amendment. "An inmate's right to freely exercise his religion may be subject to reasonable restrictions while he is incarcerated")

Defendant Leach had to review a paper packet that represented the Plaintiff and his claimed religious beliefs and then determine whether or not to approve the vegan meal request.  Based on the information Defendant Leach had available for review at that time, Leach's actions in denying the Plaintiff's vegan meal request was reasonable, tied to a valid penological interest, and did not violate the Plaintiff's First Amendment Rights.

If the Court determines the Plaintiff did have a constitutional right to vegan meal plan, the Court must also consider available case law at the time to determine whether the Plaintiff's right to the vegan meal was established "beyond debate." *Ashcroft* 563 U.S. at 741.  Whether it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

### B.    Existing Case Law

Relying on existing case law at the time, Defendant Leach would have believed that the Supreme Court had repeatedly upheld extraordinary deference granted to prison officials "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  He would have believed that the prison had a legitimate penological interest in controlling the cost of special religious diets, *Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010) and "[w]hile plaintiff[] may want to have halal meat entrees rather than vegetarian entrees and non-meat substitutes,... food preferences, as

prisoners, are limited" … and there is "no constitutional or statutory authority to support the claim that the MDOC must provide them with halal meat entrees." *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010).  Defendant Leach would have known there is a logical connection between the prison policy on inmate diet and the "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant."  *Green*, 685 F. Supp. 2d at 697.

The Defendant also would have believed that under the Free Exercise Clause, it is permissible to question whether a prisoner's belief is sincerely held.  See *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 906-07 (1990).  That prisoners who purchase foods from the prison store that violate the tenants of their religious beliefs, could be denied specialized diets.  *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003).  That even if a prisoner claims he purchased the food for someone else who is not subject to the same religious dietary restrictions, the prison policy is reasonable, and the prisoner can be removed from that diet for breaking the rules because discipline, safety and security are also legitimate penological interests.  *Berryman*, 343 F. App'x at 6.  Defendant Leach would have believed based on case law that inmates, including Muslim inmates, have the ability to self-select foods that will not violate the tenants of their religion, *Hudson*, 748 F. Supp. 2d at 729, and that MDOC simply cannot meet every special meal request.  But, Defendant would have also believed that the available vegetarian plate was Halal, *Robinson*, 615 F. App'x at 313, and Plaintiff could self-select foods that do not violate his religious dietary needs.  Defendant Leach would have known that based

on MDOC's legitimate penological interests, "a prison may refuse … to provide religious-based diets, even where the prisoners are sincere in their requests." *Green*, 685 F. Supp. 2d at 697.  Based on case law at the time, Leach also would have known that the relevant MDOC policy restricting vegan meals, withstood constitutional challenges.  *Hudson*, 748 F. Supp. 2d at 729.

When Defendant Leach reviewed the packet forwarded by Chaplin Adamson, existing case law, from the Supreme Court, the Sixth Circuit, and this Court, show that the right to a vegan meal in prison was not clearly established.  The MDOC policy restricting these meals had been challenged and upheld, and if there was a right to a vegan meal, that issue was certainly not beyond debate, and Defendant Leach is entitled to qualified immunity.

## IV.   Plaintiff's RLUIPA claim fails because he cannot establish a substantial burden and none of the Defendants can grant the requested relief.

The Religious Land Use and Institutionalized Persons Act (RLUIPA) prevents the government from imposing a "substantial burden" on a prisoner's religious exercise "unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C § 2000cc-1(a).  The phrase "substantial burden" is not defined in RLUIPA, but courts have concluded that a burden is substantial if the government places "substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729,

733-34 (6th Cir. 2007).  RLUIPA was not intended to eliminate all burdens on religious exercise; it was only intended to eliminate "exceptional" burdens.  *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).  Not every inconvenience a prisoner faces amounts to a substantial burden.

### A.   Plaintiff cannot establish a substantial burden on his religious beliefs.

Plaintiff claims he is prohibited from "the consumption or use of all foods not prepared according to the Islamic tenets." (Compl., ECF No. 1, ¶ 15, PageID.4.)  He also says, "[a]s a result of defendants refusal to approve [Plaintiff's] request for a halaal [sic] diet" Plaintiff has had "to skip meals. . .suffered constant hunger and dizziness, anxiety, stress, inadequate nutrition, weight loss, and salvation damnation."  (*Id.*, ¶ 25, PageID.5.)  Plaintiff gave similar responses during his interview with Defendant Adamson.  "The foods MUST be halal."  (Ex. F, Interview Packet, ¶ 5, p. 3.)  "I am not eating the meals and therefore not getting the proper daily nutrition as a result of avoiding unlawful meats and cross-contaminated trays/meals/foods." (*Id.*, ¶ 7, p. 4.)  But when Defendant Leach reviewed Plaintiff's commissary purchases, Plaintiff had chosen to purchase food items that are not halal.  (Ex. C, Aff. Leach, ¶ 13–16.)  Plaintiff admits that he purchases Ramen Noodles, but claims that he "probably . . . throw[s] the seasoning pack away" and only eats "butt naked noodle."  (Ex. D, Dep. Tr., 46:4–10.)  However, if Plaintiff was throwing away the seasoning packet, there would be no need for him to purchase

different flavors of Ramen.  (Ex. I, Purchase History[3].)  Furthermore, because all Defendant Leach has to consider is documentation, there is no way for Leach to know what Plaintiff does or does not consume.  Defendant Leach denied Plaintiff's request for vegan meals because it appeared that Plaintiff was willingly purchasing food that violated his stated beliefs.  Most importantly, Plaintiff never again requested access to the vegan menu or any alternate menu after this one rejection. (Ex. H, Aff. Dirschell, ¶ 5–7.)

Plaintiff has been confined with the MDOC for 34 years and has "been Muslim the duration of those 34 years[.]" (Ex. D, Dep. Tr., 11:15–16, 22–25.) Plaintiff has been designated Muslim since February 11, 2002 (Ex. E, Religious History), but waited 15 years to request a vegan meal.  (Ex. F, Interview Packet, p. 6.)  Even if it took Plaintiff 15 years to believe he needed a vegan meal, his request was denied five years ago, and he has never again requested any form of religious meal.  (Ex. H, Aff. Dirschell, ¶ 5–7.)  It is Plaintiff's own actions or inaction that has burdened his religious beliefs, not any action of the named Defendants.

Plaintiff has access to a vegetarian plate that the Sixth Circuit has determined is halal, *Robinson*, 615 F. App'x at 313, and he has the ability to purchase halal food from the prisoner commissary to supplement his diet. Moreover, Plaintiff is not barred from requesting religious meals even today.  He can still make the request again, but instead, Plaintiff filed a lawsuit to ask for a religious meal that has never been denied by any of the named Defendants.

---

[3] Highlighting was present on original records as provided by the MDOC.

Plaintiff wants halal meat in his diet, but the Defendants cannot grant Plaintiff that relief.

Because Plaintiff cannot show that Defendants substantially burdened his religious beliefs, Plaintiff cannot establish a RLUIPA violation and Defendants motion for summary judgment should be granted.

## CONCLUSION AND RELIEF REQUESTED

Because Plaintiff cannot establish each necessary element to prove each of his constitutional or statutory claims, Defendants' motion for summary judgment should be granted.

Respectfully submitted,

*s/ Jennifer A. Foster*
Jennifer A. Foster (P75947)
Attorney for Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
Dated:  September 5, 2023          (517) 335-3055

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System and placed in U.S. Postal Service a copy of the above document to non-ECF participant:

Fathiree Ali #175762
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI  48623

/s/ *Jennifer A. Foster*
Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for MDOC Defendants

27

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Local Civil Procedure Rule 7.2(b)(i), because, excluding the part of the document exempted, this brief contains no more than 10,800 words, as allowed for dispositive motions or responses.  This document contains 6722 words, as calculated by Microsoft Word 365.

2. This document complies with the typeface requirements of Local Civil Procedure Rules and the type-style requirements of Local Civil Procedure Rules because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook.