UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - KZ
December 1, 2023 12:07 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
mg Scanned by: /W /12/23

FATHIREE ALI,

    Plaintiff,

vs

STEVE ADAMSON, DAVID LEACH,
and SHANE JACKSON

    Defendants.
_____/

Case No. 1:21-cv-71

Honorable Hala Y. Jarbou

Magistrate Phillip J. Green

FATHIREE ALI, #175762
In Pro Per
Saginaw Corr Facility
9625 Pierce Rd.
Freeland, MI 48623
_____/

JENIFER A. FOSTER
Attorney for Defendants
P.O. Box 30217
Lansing, MI 48909

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION**

OVERVIEW

    The Plaintiff, Fathiree Ali, sought a halaal diet consistent with his religious belief. But, the prison chaplain would deny him access to the alternate menu, because Ali had not been approved for the religious meal. Later, a vegan menu test was administered and denied. The Defendants refusals to accommodate Ali's sincerely held religious beliefs have substantially burden his protected rights.

A. Standard for Summary Judgment

    A motion for summary judgment under Federal Rule of Civil Procedure, rule 56 is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under FRCP 56, the court is to look beyond the pleadings, considering any

1.

depositions, affidavits, and admissions on file to determine whether there is a genuine issue of material fact. Howard v Calhoun Co., 148 F.Supp 2d 883, 887 (W.D. Mich, 2001). The party seeking summary judgment bears the initial burden of showing that there is an absence of a genuine issue of dispute over any material fact. Celotex Corp. v Catrett, 477 US 317, 323 (1986). Also, under FRCP 56, the Court must draw all reasonable inferences from the record in the light most favorable to the non-moving party and the Court may grant summary judgment only where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 US 574, 587-588 (1986). In light of applicable law and the evidence presented herein, Defendants Motion for Summary Judgment must be DENIED in its entirety.

B. <u>Statement of the Case</u>

Fathiree Ali is an inmate who has been committed to the MDOC since 1989. (Decl. Ali, Exh A). He is currently confined to the Saginaw Correctional Facility, a MDOC facility.

Mr. Ali is a devout Muslim, and adherent to the Islamic faith, and he is recognized as such be the MDOC. (R.3-6, PgID.189). He attempts to comply with the requirements of Islam despite his incarceration. (Decl. Ali, Exh A). As a practicing Muslim, Mr. Ali believes that he must adhere to a unadulterated diet as prescribed by his faith. (Id.) Foods that can be eaten by Muslims are referred to as "halaal." (Id.) The term "halaal" means "lawful" or "permissible" and refers not just to foods but also to other matters that are permissible under Islamic law. (Id.) The opposite of matter that are halaal are matters that are "haram, or forbidden. (Id.) The Qur'an, the primary religious text for Islam, teaches that certain foods, such as pork or alcohol, are always haram and therefore may never be consumed by Muslims. (Id.) Other foods, such as meat from cows, veal, lamb,

2.

sheep, goats, chickens, and ducks, and vegetables are deemed to be halal if they are slaughtered in the manner prescribed by Islamic law and they are not contaminated by food that is haram. (Id.)

To Mr. Ali, a halaal diet must not only avoid foods that are prohibited, but also requires that he consumes dairy, cheese, eggs, meat (i.e. cattle, fish or poultry) and its fats for their nutrients, benefits, and most importantly obedience to the Commandments from his Lord and the Prophet $^{saw}$. (Decl. Ali, Exh A). It is respectfully submitted that it is common knowledge within the Islamic tenets that a halaal diet contains meat, dairy, milk, fish, poultry, and eggs. (Declarations: Ali, Exh A; and Hajj S. Abdul-Basir, Exh C; Daw'ud, Exh E.)

Mr. Ali also interprets the Qur'an and Sunnah to require a diet that consumes meat, fish, dairy, eggs, dates and honey. (Decl. of Ali, Exh A). The Qur'an states in Surah 2:168, as provide in two other translations: O men! Eat the lawful and good things out of what is in the earth," or "O ye people! Eat of what is on earth, lawful and good." (Id.)

The Qur'an does not prescribe the frequency with which a person must consume meat, fish and dair, but Mr. Ali believes that he should consume it as often as persons on other diet in the DOC consume meat, fish and dairy. The regular diet lines at the prisons serves meat, chicken or fish at minimum of once or twice per/day. At times grilled cheese (4x per/mo), milk (twice per/day) is served during most lunches and dinners and three breakfast per/week. (Id.)

II. <u>The DOC's provisions of religious diets</u>

While committed to the DOC, Mr. Ali has sought to adhere as closely to a halaal diet as possible. (Id.) The regular DOC diet contains meat, but it is not halaal in that the meat is not slaughtered in the manner prescribed by Islam, and cross-contamination is present due to its preparation and handling. (Id.) However,

3.

prompted by litigation, the DOC provides Jewish inmates with kosher diets which include meats and dairy. (JPAY Notice Re Jewish Meals, Exh I).

Since 2007, Ali made request during each Ramadan to prison officials for a halaal meal (Decl. of Ali, Exh A) The request are processed by the facility chaplains and wardens (Id). Despite the request, prison official did not accommodate Ali with a halaal meal, but that of a regular meal during Ramadan. (Id.). In 2006, prompted by litigation in federal court challenging the accommodation of a halal diet, the court found a constitutional right for Muslim prisoner to eat a halal meal. Dowdy-El v Caruso, No. 2:06-cv-11765 (E.D. Mich, 2006). Even though the case settled, most Muslim objected to the parties agreed vegan menu.

In 2017, Mr. Ali made request for a halaal diet. (R.33-5, PgID.179). He believes that a failure to consume a halaal diet will cause disbelief and severe punishment as a result of his sins and disobedience. (Id.) The Qur'aan states at Surah 5:5 that food of the "people of the Book" or "those who have been given the Book" is lawful for Muslims. (Exh A). The terms "people of the Book" or "those who have been given the Book," include Jews. Therefore, in the absence of meals that are halal, Muslims may eat a kosher diet, though halal meat is always preferred. While perhaps acceptable to Jewish and some Muslim inmates, Mr. Ali does not believe that a meatless diet is halaal. (Decls: Ali, Exh A, and Hajj, Exh C).

Mr. Ali does have access to commissary, where there are only two halaal meats available for purchase (Exh A). While there are no meals, these meats are not allowed to be taken or consumed in the chowhall. (Id.) In addition, the cost of these meats and Ali without employment and its low wages ($4.52 per/mo), substantially strains his practice because he has to rely upon his wife--which is a sin-- to assist with his diet. (Id.)

4.

During a warden's forum meeting, Ali spoke with Warden Jackson, about the cross-contamination of foods, hotboxes, inadequate nutrition, and the unavailability of halaal meals through food service and during visit. (Id.) Jackson informed Ali that he would correct this matter. While some corrections were made on with the visiting room vendor, food service was not. Later, Ali was contacted by the Chaplain Adamson about his halaal diet request. Jackson told Ali just eat what you can, and he's done with it. (Id.)

The remaining facts are presented with its argument so as not to produce duplicity.

C. Defendants Withholdings of Notice for Deposition Transcript Inspection, As Well As Their Refusal to Turn Over Discovery Request Breaches Plaintiff's Right of Fair Discover. Summary Judgment Should Be Denied.

The Defendants did not comply with the requirements of the Civil Rules and had no regard for Ali's right to obtain full and fair discovery relevant to their personal involvement. Failure to make disclosures or cooperate in discovery corrupts the process. Fed.R.Civ.P. Rule 37. Similarly, under rule 30, they withheld notice of the availability of the July 24, 2023, deposition, as well as the right to examine it, until late when it filed its motion for summary judgment. While the Defendants' actions threatens the reliability of the fact-finding process which is essential to the courts' ability to ensure that cases are decided on the merits after consideration *of all relevant evidence bearing on the party's claims*, these procedural violations have been overlook by this Court despite Ali's multiple pleadings.

"The right of cross-examination inheres in every adversary proceeding and that it is established beyond any necessity for citation of authorities ... the litigant, deprived of cross-examination, has been denied due process of law." Derewecki v PA. R.R., 353 F.3d 436 (3rd Cir. 1965).

5.

Just as this case should be decided on the record, the court's records reflect through Ali's filed Certificate of Service, a request for discovery and interrogatories on July 7, 2023. (R.26). Under Houston v Lack, 487 US 266, 277 (1988), the Supreme Court has determined that a prisoner's pro se pleading is filled ... when given to a prison official for mailing.

Since, the Defendants have denied Ali access to discovery, interrogatories, notice of deposition completion and its transcripts, they have extremely prejudice and cripple the divulgence of evidence essential for this forum. Still today, Ali remains without the transcripts despite countless efforts by him and his wife. (Decls. of Ali, Lucinda Ali - Exhs. A, B). Such bad faith should entitle Mr. Ali to more latitude when deciding summary judgment.

### D. Each Defendant was Personally Involved in the Denial of Ali's Pled Halaal Diet, and Substantially Burden His Religious Practice

While Defendants admit that "Plaintiff request was treated as a request for the vegan menu." (R.33, PgID.147), they exaggerates the suggestion that as of September 2017, "Plaintiff is suing for something that he never asked the MDOC to provide -- an alternate religious diet with halal [sic] meat" (R.33, PgID.141). Mr. Ali contends that their statement is not true, at minimum misleading, as shown by the evidence.

Based upon the testimony of Ali's deposition, written and oral request were made, and he did in fact seek the provisions of a halaal diet from each Defendant, which they took a personal interest, prevented and denied. (Def. Exh. - R.33, PgID.196), (Decl. of Ali, Exh A). In addition, they denied Ali the vegan menu, so that he could not access the alternate menu. (Id.). A reasonable juror could readily find that each Defendant personally prevented and denied Ali's religious practice without justification.

1. **Defendant Chaplain Adamson**

Adamson avers that he "acted only as a designee to gather information from Mr. Ali about his religious beliefs and request for the vegan menu" and "not a decisionmaker." (R.33-8, PgID.199). But, the evidence illustrates a more personal involvement and a direct decision which hindered/burden Ali's religious practice. First, Adamson without justification took it upon himself to deny and not forward Ali's request for a halaal diet to the Deputy Director for approval. Here, even though Adamson did not actually deny "the alternate menu", his decision personally prevented it from happening. Secondly, Adamson mislead Ali to believe that if he wanted a halaal diet, the he must first exhaust the vegan diet. This bogus information led Ali to participate in the religious meal testing. During Adamson's interview testing, when asked to "[e]xplain why the meals *at the facility were you are currently house* do not meet the requirements of your religious beliefs", Ali with a definitive response, address the cross-contamination issue, and the requirement that "meats/poultry are party of the Islamic diet." (R.33-7, PgID.194). Still, Adamson, while aware of Ali's specific religious needs, recklessly processed Ali's request.

Hence, Adamson actively engaged in behavior the direct result which resulted in deprivation of Ali's constitutional right. Further, the misinformation deprived Ali of the alternate menu process. Cf. Ross v Blake, 578 US 632 (2016)(explaining three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief ... *the first when a procedure operates as a simple dead end--with officer unable or consistently unwilling to provide any relief to aggrieved inmates*; next, the scheme is so opaque that it becomes, practically speaking incapable of use; and finally when *prison administrators thwart inmates from taking advantage of it through machination, misrepresentation or intimidation*.) A juror could easily conclude

7.

that Adamson's decision stopped the development of a halaal diet, and could provide Ali with relief.

## 2. Special Acts Coordinator Leach

Defendant Leach admits that he denied Ali access to a religious meal. (R.33, PgID.138). That being on the basis of "Mr. Ali was purchasing food items from the store that conflicted with his stated religious dietary requirements. ... All things considered I did not find Mr. Ali's statements to be sincere, and I denied his request for access to the vegan menu." (R.33-4, PgID.176). But, countervailing evidence from Adamson's investigation and interview report found Ali's beliefs to be sincerely-held:

* no problem with Ali's store purchases, (R.33, PgID.143);
* many years of religious sincerity (R.33-7, PgID.191);
* that Ali takes initiative and is responsible in group leadership (R.33-7, PgID.191); and,
* recommends approval of religious meal (R.33-7, PgID.192).

In the same way, Plaintiff's evidence plainly asserts his sincerity. Decls of Ali, Lucinda Ali, John Scott, Exhs. A, B, F). Still, even though prisoners approved to eat meals from the religious menu are prohibited from possessing or consumption of foods that violate a tenet of their religious belief, no such directive or notice exist for those applicants prior to seeking approval for religious meals under MDOC policy. See (R.33-3, PgID.169 §SS). New applicants, like Ali, was not given any notice nor the opportunity to explain any reputed unlawful purchases or purchase Leach made up to be forbidden. This means, Leach's discretionary evaluation offends the fundamentals of due process, conduct court have similarly found inappropriate and insufficient to grant summary judgment. See Ewing v Finco, 2021 US App LEXIS 182 (summary judgment denied where "there was not

evidence that the plaintiff's were put on notice that their prior purchases would be considered in obtaining approval for religious meals or that they were given an opportunity to explain those purchase."

On the other hand, Defendants do give notice, due process and second chances for their religious meal participants/store purchase offenders. (R.33-3, PgID.169, §SS). Though, Ali was not. In other words, Ali's request was unreasonably, biasly capriciously decided, even though other prisoners were approved for their religious meals despite their purchase of similar items as those shown in Ewing, supra. judicial notice should be taken of the declaration presented in Ewing, from Charles Conway, Raheem Muhammad, and Quentin Betty. Mr. Ali submits more similar instances, attached as affidavits from Johnny Jenkins and Daw'ud ibn Clark. (Exhs. D, E).

The store purchases Leach deem unlawful to Ali's belief in their motion -- include: 1) jalapeno cheese spread; 2) chili ramon noodles, 3) roasted chicken ramon noodles, 4) Hunts BBQ sauce, and 5) Turkey Summer Sausage (R.33-10, PgID.207-209).

Conversely, most of these purchases are not haraam under Ali's religious beliefs. Though the turkey sausages were used to pay debts and bartering (Exh A), the Ramon noodles contain a very high salt ingredient, which Ali can not -- and do not -- consume due to his chronic high blood pressure and Health Care Services treatment and warnings. As for the Defendants' concern that Ali' "purchase different flavors of Ramen" (R.33, PgID.153-154), the MDOC commissary put limits on the amount each prisoner can spend, as well as a purchasing limit on the number of a particular item. Since the Ramon noodles limit is 10, Ali maximizes this limit by purchasing different flavors, and discarding their flavor packets. (Id @ 153; Decl of Ali, Exh A).

9.

The Hunts Original BBQ Sauce ingredients are affixed as Exhibit J; and they do not contain any haraam items. Similarly, the jalapeno cheese does not contain haraam ingredients because dairy is a requirement to be consumed under Islamic tenets. The Defendants' ban of these products to Muslis affirms Ali's assertion in his Complaint about their imposing Christian conciliation of religious orthodoxy for what a Muslim should or should not eat. Their actions are in bad faith, unreasonable with intent to burden, and modify Ali's sincerely held religious belief.

All in all, Leach's claim about whether the store purchase were halaal, not vegan, confirms his awareness that Ali's request was the basis of a halaal diet, and he likewise recklessly withheld Ali's request form the Deputy Director.

### 3. Defendant Warden Jackson

While Warden Jackson presents no proof denying his personal involvement outside of the argument. Ali spoke with Jackson--after continuous denial-- that Adamson and Leach refuse to provide a halaal diet consistent with his religious belief. Also, that the visiting room foods were not halaal. Jackson's treatment of the religious burdens was that Ali should just eat what he can, and he was done with it. Ali then grieved all the Defendants concerning their refusal to provide hi a halaal diet. (R.1-1, PgID.11-12). Like the other Defendants, Jackson kept Ali's request from the Deputy Director, and further denied a halaal diet.

    E.  MDOC Policy Ambiguity, Customs and Practices Concerning Its Alternate Menu and Its Procedures Presents a Triable Issue of Fact for a Juror to Determine Its Availability or Existence.

Defendants contend that, by their policy, only the Deputy Director can approve an alternative diet (R.33, PgID.131). And, that Plaintiff "never asked for an alternate menu accommodation" from the Deputy Director. (R.33, PgID.141). Mr. Ali contends that the evidence states otherwise. See (Exh A.). Also, it can be

reasonably presumed that relief of an alternate menu do not even exist. Adamson based on knowledge from administrative meetings, told Ali that the meat diet will never be approved for Muslims (Decl. Ali, Exh A). Defendants routinely adopt unwritten discretionary customs and procedures to approve or dispose of religious meal request. The policy do not give any clear instructions about where "alternate menu" request should be made. In fact, a pattern the policy do convey by its other sections -- demonstrates that all request commence by "submitting a written request to the Warden or designee." (R.33-3, PgID.165-169, §§(K), (JJ) and (PP). Given the ambiguity, a prudent person or juror, as did Ali would reasonably interpret all religious request to commence by making them "with the facility Warden or designee. .. [and they] shall forward the request and any supporting documents to the CFA Special Activities Coordinator," who will pass it on to the Deputy Director." (Id). Here, each Defendant did knowingly, intentionally, and with deliberate indifference, prevented Ali's halaal diet request from the Deputy.

Each Defendant aver that they have no personal involvement in the "alternate menu" proces and that the only path is directly to the Deputy. But, these statements are contradicted by Leach's acts and admissions found in Orum v MDOC, 2018 US Dist LEXIS 222616; 2018 WL 8369471. In the Orum case, the plaintiff sought an alternate menu to his vegan menu because of his Jewish tenets. At first, he kited the warden and food service director, they both responded that his diet met the religious meal requirement and any complaints about an alternate meal should be addressed to SAC. Later, SAC Leach would respond to the plaintiff's request with instruction to submit his request to the facility Chaplain. Plaintiff met with the Chaplain and demonstrated his need for an alternate diet. The Chaplain forward to Leach his results. After, Leach, not the Deputy, sent plaintiff a memo stating that his request for an alternate diet had been denied.

11.

Similarly, in Spearman v Michigan, 2018 US Dist LEXIS 85163, the plaintiff raised an alternative vegan menu issue directly with CFA Deputy Director Finco. Special Acts Coordinator Leach responded to the letter directing plaintiff to *follow the procedure specified in the PD*. Accordingly, plaintiff returned to the facility chaplain. Tthe chaplain again interviewed plaintiff, considered his request as if he were asking for an alternate to the vegan menu ... *the chaplain concluded that plaintiff was not entitled to an alternate to the vegan menu*. The chaplain then consider plaintiff's request as if he were simply asking for the vegan menu, which he had previously asked for. SAC denied that request, not the Deputy. Defendants' policy is not etched in stone, but arbitrarily enforced.

Then again, the alternate menu cat & mouse diversion is played out in Martin v McKee, 2020 US Dist LEXIS 105635 (plaintiff is given a test by Chaplain Rink for a religious meal, even though he sought an alternate menu. Rink informed Martin that the MDOC did not have an alternate meal and never intended to provide one for Muslim.) Because Defendants have denied Ali discovery, Ali can not prove--outside of these cases--that the "alternate menu" is a deadend that simply do not exist, and that just about anybody can deny or consider its relief. Cf <u>Ross</u>, <u>supra</u>.

These revelations demonstrates that Defendant Leach and Adamson has more involvement and flexibility in the customs and practices governing the alternate meal process than he avers under oath. Likewise, the process includes the Chaplain and his investigation and denials of the alternate diet. Thus the veracity of Defendants statements on a material fact is indeed a genuine dispute. Now, more credence should be given to Ali's posture that Adamson did know of his halaal request and personally 1) was capable of process it as an alternative menu; but decided not to and denied it ; and 2) whether he relied upon a custom and practice that one must apply for a vegan menu prior to an alternate menu request. Besides,

12.

based on the mentioned string of cases, Defendants concealed a material fact so that they could possibly defeat Ali's alternate menu request. Under the equitable estoppel doctrine, the Defendants can not now advance a different claim on alternate menus. Armistead v Vernitron Corp., 944 F.2d 1287, 1298 (6th Cir. 1991).

Based on the evidence, the Court can deny Defendants summary judgment, Fed.R.Civ.P. 37(b)(2)(a-c); Taylor v Medtronics, Inc., 861 F.2d 980, 985 (6th Cir. 1988), and/or find that there is a triable issue of facts about how or where a request for an alternate menu is processed. Such disputes are evidence that a reasonable juror could decide for Mr. Ali. See Johnson v Jones, 515 US 304 (1995); Fed.R.Civ.R. Rule 56(C)(1)(A).

### F. The Defendants are Not Entitled to Qualified Immunity

"Under the doctrine of qualified immunity, 'governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v Sanilac County, 606 F.3d 240, 247 (6th Cir. 2010)(citing Phillips v Roane County, 534 F.3d 531, 538 (6th Cir. 2008)). Determining whether government officials are entitled to qualified immunity generally requires two inquires: "First, viewing the facts in light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" Miller, supra, at 247 (citing Phillips, supra at 538-539; Pearson v Callahan, 129 S Ct. 808, 815-816 (2009).

Mr. Ali has clearly shown that all the Defendants violated his constitutional rights at the time of the complained request. Defendants actively hindere the means to and/or denied Ali a halaal meal consistent with his belief. It is equally clear that Ali's right to "an adequate diet without violating the inmate's

religious dietary restrictions was clearly established. It was equally well established that these sincerely held religious beliefs are not to be substantially burdened. As such, Defendants can not be protected by qualified immunity.

    G. **Defendants Knowingly Burden Mr. Ali's Religious Beliefs By Withholding An Adequate Diet With the Nutrition Derived From Meats and Dairy In Violation of the First Amendment, RLUIPA and Fourteenth Amendment.**

The Constitution protects Mr. Ali's free exercise of religion. Cruz v Beto, 405 US 319, 322 (1972). Similarly, it guarantees the right to meals that meet their nutritional needs and right to be served meals that do not violate their sincerely held religious beliefs. Colvin v Caruso, 605 F3d 282, 290 (6th Cir. 2010). The 14th Amendments also protect Ali from discriminatory practices.

RLUIPA was "enacted ... in part, to protect inmates and other institutionalize persons from substantial burdens in freely practicing there religions." Charles v Verhagen, 348 F3d 601, 606 (7th Cir. 2003). RLUIPA provides an "expansive protection for religious liberty" for prisoners, among others. Holt v Hobbs, 135 S Ct 853, 860 (2015). Under the statute the plaintiff has the burden of persuasion of showing that a challenged practices creates a substantial burden on religious exercise, at which point the burden of persuasion shifts to the government to prove that the burden is necessitated by a compelling governmental interest and that the restriction is the least restrictive means to meet that interest. 42 USC §2000cc-2(b). While "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' §2000cc-5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely held based on a religious belief and not some other motivation. As shown below, Ali's belief is strongly supported on the Qur'aan and Sunnah legislations.

Plaintiff submits as evidence relevant parts of the Handbook, which set forth

14.

general information on the beliefs, practices, and customs of each recognized group. (R.33-3, PgID.165, §J). This Handbook is maintained by Leach. Even though the Handbook confirms meat as part of Mr. Ali's religious beliefs, Defendants' behavior intentionally withholds the nutrition from meats: "camel, lamb or beef" from his diet. See Exhibit - H, pg. 7). Ali submits this was discriminatively motivated to refine the Muslim belief within his practices, and substantially burden and modify its compliance. Still, Ali has no other options to conform since prison rules prohibit taking store purchases to the chowhall. (Decl of Ali, Exh A). Likewise, the commissary does not sell halaal meals. (Id.) Naturally, the combination of Defendants actions and position of veganism do in fact substantially burdens Ali's practice, compels modification and is contrary to Ali's system of beliefs. Further, the actions is not the least restrictive means and is without any compelling governmental interest.

Ali further asserts that because of the cross-contamination of served foods, and having to pick around certain foods and meals, he is not receiving an adequate diet consistent with his religious dietary restrictions. In fact, judicial notice should be taken of PD 04.07.100 which do not provide meat substitutes at breakfast---three times per week; so, Ali is completely without adequate nutrients or calories, unlike other Christian and Atheist who do eat such meats which do not violate their beliefs. (Decl of Erroll Smith, Exh K). See. Alexander v Carrick, 31 F. App'x 176, 179 (6th Cir. 2002). Not one Defendant contest whether as part of Ali's beliefs: 1) meat and dairy must be consumed, and 2) that their consumption is a legislated and necessary nutritional, protected under the First Amendment.

Because Ali was not allowed to amend his petition, he can not properly contest Defendants policy statements and customs constitutionality.

Based on the evidence presented, under the Islamic tenets, a "blessed nutritional meal" requires consumption of meats, dairy, cheese, dates, eggs,

chicken, honey and fish; and exclusion of them makes the diet unlawful. (Ali's Declaration, Exh B); (Declaration of Mutahhir, Exh C). Given this case, Ali's belief to consume these foods is substantially burden due to Defendants' erect barriers and dead-ends. Cf. Ross v Blake, supra.

The Defendants argue that Ali can not show a violation of his First Amendment right. On the contrary, the evidence proves that Ali's belief is deeply rooted on the text of the Qur'aan and Sunnah, which hold that to maintain a halaal diet, he must not only avoid certain foods, but must also consume meat, fish, chicken, dairy, eggs, honey and dates as part of his diet because Allaah commands it. It is an interpretation shared by other Muslims, though not all. Nonetheless, protections under RLUIPA are "not limited to beliefs which are shared by all members of a religious sect." Holt 135 SCt at 863, and court have recognized the sincerity of Muslims who believe they must eat meat as part of a halal diet. See, eg. Jones v Carter, 915 F3d 1147 (7th Cir. 2019)(requiring Muslim inmate to engage in conduct--refraining from all meat-- violates his sincerely held religious beliefs under RLUIPA); Abdulhaseeb v Calbone, 600 F3d 1301, 1314 n7 (10th Cir. 2010)(recognizing that where Muslim inmate demanded a meat-based diet "neither this court nor defendants are qualified to determine that a non-port or vegetarian diet should satisfy Mr. Abdulhaseeb's religious beliefs," and denied summary judgment request on the sincerity requirement (emphasis added)); Muhammad v Wheeler, No. 5:15-cv-130-KGB/PSH, 2018 WL 1558279, at *6, *8 (E.D. Ark. Mar. 30, 2018)(finding Muslim inmates belief that "he must observe a halal diet, which he believes includes meat once a day" a sincerely held religious belief under RLUIPA); Abdul Aziz v Lanigan, 2020 US Dist LEXIS 106718 (Muslim inmate religious believe that vegetarianism is an innovation, because Allah command to eat the beast of cattle, protected under RLUIPA as a sincerely religious belief).

Likewise, the evidence, including statements by Defendant Adamson based on

16.

what he personally observed, as well as Unit CO (correction officers), proves that Ali's beliefs are sincerely held (R.33-7, PgID.191). And, the evidence further shows that each Defendant personally infringed on Ali's practice, by denying access to the vegan menu--which MDOC custom and practices requires for him to explore--before seeking an alternate menu or by refusing to process Ali's request as a alternate menu. See Declaration Exhibits, A, D, E, F). In short, the policy Defendants rely upon is not set in stone as to who approves or denies the diet. Even so, Jackson makes no claim, while Adamson and Leach downplay their direct involvement--based on this policy--in the alternate menu process as shown by the cases submitted. In that regard, a reasonable juror could readily find them not truthful, the policy ambiguous and arbitrary, and that they have more authority and involvement to grant Ali relief than appears, and find in favor of Ali.

Besides, Defendants regularly provide those of Jewish inmates meats and dairy with their diet, while not Ali because he is Muslim. See Exh I; Ackerman v Washington, 16 F.4th 170 (6th Cir. 2021).

In addition, accommodations are approved by the Defendants warden and chaplain for Christians' "One Day with God" and Kyrex meetings where they are provide meals, such as eggs, dairy and meat, consistent with their beliefs. (See Decls: Erroll Smith, Exh K; Corey Dotson, Exh L; and Anthony Hannon, Exh M.) But, such equitable protection--meals and nutrition--is not extended to adherents like Ali.

As shown in these pleadings, at the time of Ali's request, the law was clearly established that he was equally entitled to a halaal meal as were others, and that a vegan menu substantially burdens his religious practice.

Therefore, Mr. Ali's sincere religious belief that a halaal diet must consume meats and dairy cannot be substantially burdened without adequate justification under RLUIPA. Likewise, Defendants fail to show any compelling interest, and that

17.

their practice is the least restrictive means. Hobby Lobby Store, Inc, 573 US (2014). Summarily, genuine issues of material facts abound in this case, as noted above, summary judgment is premature and Defendants motion should be denied.

    I certify that the foregoing statements made by me are true to the best of my knowledge.

                                                      Respectfully submitted,

November 27, 2023                                   FATHIREE ALI

### VERIFICATION

    Pursuant to 28 USC §1746, I verify under the penalty of perjury that the facts stated herein are true and correct.

November 27, 2023                                   FATHIREE ALI

### CERTIFICATE OF SERVICE

    Plaintiff Fathiree Ali, declare under the penalty of perjury that the foregoing is true and correct, that on the 27th day of November 2023, he handed to the prison counselor an original copy of PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION, to be mailed to Jennifer A. Foster, AAG, at P.O. Box 30217, Lansing, MI 48909.

November 27, 2023                                   FATHIREE ALI

    Plaintiff Fathiree Ali, declare under the penalty of perjury that the foregoing is true and correct, that on the 27th day of November 2023, he handed to the prison counselor an original copy of PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION, to be mailed to the United States Western District Court.

November 22, 2023                                   FATHIREE ALI

FATHIREE ALI, #175762
Saginaw Corr. Facility
9625 Pierce Rd.
Freeland, MI  48623





United States District Court
Attn: Clerk of the Court
107 Federal Bldg.
410 W. Michigan Ave.
Kalamazoo, MI  49007