UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI, #175762,

                Plaintiff,                           Hon. Hala Y. Jarbou

v.                                         Case No. 1:21-cv-71

STEVE ADAMSON, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 32). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this action terminated.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF). The events giving rise to this action occurred at the Carson City Correctional Facility (DRF). Plaintiff initiated this action against DRF Chaplain Steve Adamson, MDOC Special Activities Coordinator David Leach, DRF Warden Shane Jackson, and the MDOC. In his complaint (ECF No. 1) Plaintiff alleges the following.

-1-

Plaintiff is a devout Muslim whose faith obligates him to abstain from eating food that is not prepared in accordance with Islamic law.   Plaintiff must, therefore, consume only "halal" foods.   Moreover, a vegetarian or vegan diet is insufficient as Plaintiff's diet must include halal meat and dairy products.   In August 2017, Plaintiff submitted a request to receive a halal diet.   On September 25, 2017, Defendant Adamson interviewed Plaintiff and administered a "faith test."   Adamson subsequently forwarded his recommendation on the matter to Defendant Leach. Plaintiff's request for a halal diet was denied in October 2017.

Plaintiff alleges that the decision to deny his request for a halal diet: (1) violates his First Amendment right to freely exercise his religion; (2) violates the First Amendment's Establishment Clause; (3) violates the Religious Land Use and Institutionalized Persons Act (RLUIPA); and (4) violates his right to the equal protection of the laws.   Plaintiff's claims against the MDOC were dismissed on screening.   (ECF No. 7-8).   Defendants Adamson, Leach, and Jackson now move for summary judgment. Plaintiff has responded to Defendants' motion.   The Court finds that oral argument is unnecessary.   *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether

its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."   *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

## <u>ANALYSIS</u>

## I.   **Defendant Jackson**

In his complaint, Plaintiff specifically references Defendant Jackson in the caption and in the section identifying the parties.   (ECF No. 1).   Defendant Jackson is not identified anywhere else in Plaintiff's complaint and no factual allegations are advanced against him specifically.   Instead, Plaintiff repeatedly alleges in his complaint that "the defendants" took, or failed to take, some particular action.   As Defendant Jackson argues, however, such allegations are insufficient to maintain a claim against him.

To sustain a claim against Jackson, Plaintiff must allege and demonstrate that *Jackson* took some action that violated his rights.   *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("each government official. . .is only liable for his or her misconduct"). Vague allegations of "collective wrongdoing" do not suffice.   *See, e.g., Thomas v. Grayson County, Kentucky*, 2022 WL 17327308 at \*4 (W.D. Ky., Nov. 29, 2022) ("[t]o avoid dismissal of a claim, a plaintiff must allege, with particularity, facts that demonstrate

-4-

what *each* defendant did to violate the asserted constitutional right") (citations omitted); *Baytops v. Slominski*, 2023 WL 5822760 at *3 (E.D. Mich., June 30, 2023) ("[section] 1983 plaintiffs may not lump all defendants together in each claim and provide no factual basis to distinguish their conduct"); *Collins v. Godbee*, 2019 WL 4393550 at *3 (E.D. Mich., Sept. 13, 2019) (same).   Despite having had the opportunity to conduct discovery, Plaintiff has failed to present or identify any evidence that Defendant Jackson was involved in the conduct giving rise to his claims.   Accordingly, the undersigned recommends that Defendant Jackson's motion for summary judgment be granted.

## II.    Defendant Adamson

With respect to Defendant Adamson, the only specific allegation Plaintiff advances is that, after submitting his request for a halal diet, Adamson "interviewed [Plaintiff], administered a 'faith test' and submitted his recommendation [to] Defendant Leach."   (ECF No. 1 at PageID.4).   Plaintiff does not allege whether Adamson recommended that his request be granted or denied, however.

In support of his motion for summary judgment, Defendant Adamson has presented evidence establishing that (1) he was not authorized to approve or deny Plaintiff's request but instead could only make a recommendation regarding such, and (2) that he recommended to Defendant Leach that Plaintiff's request for a special religious diet accommodation be *granted*.   (ECF No. 33 at PageID.191-201).   Plaintiff has presented no evidence to the contrary.   Plaintiff instead argues that Defendant Adamson denied or impeded other requests he made for religious diet accommodations.

(ECF No. 53).   But Plaintiff has not asserted in his complaint any claims related to these alleged subsequent events.   The only claims properly before the Court relate to Plaintiff's August 2017 request for a religious diet accommodation.   With respect to these events, Defendant Adamson is entitled to summary judgment because Plaintiff has presented no evidence that Adamson did anything to deny or impede his request for accommodation.   Accordingly, the undersigned recommends that Defendant Adamson's motion for summary judgment be granted.

## III.   Defendant Leach

Plaintiff alleges that Leach denied his request for religious diet accommodation. Plaintiff alleges that Leach's action violated (1) his First Amendment right to freely exercise his religion; (2) the First Amendment's Establishment Clause; (3) the Religious Land Use and Institutionalized Persons Act (RLUIPA); and (4) his right to the equal protection of the laws.   Defendant Leach does not dispute that he denied Plaintiff's request, but asserts that he did so because Plaintiff was purchasing from the prison commissary certain foods that "conflicted with [Plaintiff's] adamantly professed religious dietary needs."   (ECF No. 33 at PageID.176).

A.     Plaintiff's Claim

At the outset, it is necessary to clarify the relief Plaintiff is seeking in this court. To accommodate prisoners' religious beliefs, the MDOC "serves a universal religious diet to all prisoners with religious dietary needs."   *Ackerman v. Washington*, 16 F.4th 170, 176 (6th Cir. 2021).   These "universal religious meals" are vegan as well as kosher and

halal.  *Ackerman*, 16 F.4th at 176 (recognizing that the MDOC's vegan meals are kosher); *Al-Shimary v. Dirschell*, 2023 WL 5385414 at *3 (E.D. Mich., Aug. 22, 2023) (recognizing that the MDOC's vegan meals are halal).

Pursuant to the Policy Directive in effect during the time period relevant to this action, a prisoner was permitted to receive the MDOC's vegan meal "only with approval of the CFA Special Activities Coordinator."   MDOC Policy Directive 05.03.150 ¶ PP (eff. Sept. 15, 2015).   During the time period relevant here, Defendant Leach was the Special Activities Coordinator.  (ECF No. 33 at PageID.203).   If a prisoner believes that the vegan meal option does not meet his religious needs, he can request an "alternative" religious menu, but any such request must be approved by the MDOC Deputy Director. MDOC Policy Directive 05.03.150 ¶ OO (eff. Sept. 15, 2015).

On or about September 25, 2017, Plaintiff submitted a request for a "religious meal" accommodation.  (ECF No. 33 at PageID.191-96).   Defendants Adamson and Leach interpreted Plaintiff's request as a desire to receive the MDOC's vegan meal. (ECF No. 33 at PageID.174-77, 198-201).   Accordingly, Plaintiff's request was ultimately decided by Defendant Leach not the MDOC Deputy Director.   In his response to the present motion, Plaintiff indicates that he understood that securing access to the MDOC's vegan menu was a necessary prerequisite to obtaining an "alternative" religious menu which was his ultimate desire.   (ECF No. 53 at PageID.297, 315).   Thus, Plaintiff did not initiate the present action seeking approval to receive the MDOC's vegan menu. Instead, Plaintiff is seeking an "alternative" religious diet.   Specifically, Plaintiff is

requesting that the Court enter an order "requiring defendant to approve" his request to receive halal meals, which include meat and dairy products.   (ECF No. 33 at PageID.187; ECF No. 53 at PageID.293-94).

B.   Free Exercise

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."   *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").   Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion.   *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

To demonstrate that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon his practice or belief.   *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same). Even if Plaintiff makes this showing, such does not end the analysis because the fact that "prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."   *Wolfish*, 441 U.S. at 545; *see also, Arauz v. Bell*, 307 Fed. Appx. 923, 928 (6th Cir., Jan. 22, 2009) (even if a prisoner demonstrates

-8-

a violation of his First Amendment rights, the defendant is entitled to relief if his action is reasonably related to legitimate penological interests).

Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting

-9-

*Shabazz*, 482 U.S. at 349).   The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors.   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest.   It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."   Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest.   *Flagner*, 241 F.3d at 484.

-10-

As of the time period relevant in this action, the MDOC offered "a vegan menu to meet the religious dietary needs of prisoners."   MDOC Policy Directive 05.03.150 ¶ OO (eff. Sept. 15, 2015).   Prisoners were required to obtain approval from the Special Activities Coordinator to access the vegan menu, however.   *Id.* at ¶ PP.   MDOC policy provided that such approval "shall be granted only if it is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs." *Id.*   MDOC policy further provided that a prisoner, once approved to "eat meals prepared from the religious menu," shall not possess or consume "food that violates a tenet of his/her designated religion."   *Id.* at ¶ SS.

MDOC policy did not, however, require prisoners to abstain from foods that violate their religious beliefs *prior to* requesting access to the vegan menu.   Nonetheless, the MDOC for many years interpreted its policies as incorporating this requirement.   Thus, requests for access to the vegan menu or similar accommodation were routinely denied on the ground that the prisoner, prior to making such request, had eaten or possessed food which was contrary to their stated religious beliefs.   Moreover, courts routinely concluded that such action did not violate the prisoner's First Amendment rights.   *See, e.g., Swansbrough v. Martin*, 2017 WL 64917 (W.D. Mich., Jan. 6, 2017); *Miles v. Michigan Department of Corrections*, 2020 WL 6121438 at \*2-3 (6th Cir., Aug 20, 2020).

In 2021, however, the Sixth Circuit, in an unpublished decision, rejected this approach.   *See Ewing v. Finco*, case no. 20-1012/1022, Order (6th Cir., Jan. 5, 2021). In *Ewing*, the defendants took the same action that is presently being challenged.

-11-

Specifically, the defendants denied a prisoner's request to receive vegan meals on the ground that the prisoner, prior to making his request, purchased and/or consumed food items inconsistent with his stated religious beliefs.   *Id.* at 1-2.   The district court granted summary judgment to the defendants.   *Id.* 2.   The Sixth Circuit, however, rejected this conclusion, observing that "[t]he cases upon which the defendants and the district court relied. . .involved situations where the prisoner, after receiving approval for religious meals, purchased or possessed food items inconsistent with the prisoner's claimed dietary restrictions and was then removed from the religious meal program." *Id.* at 5.   While the viability of the approach employed in this matter has now been called into question, Defendant Leach argues that, even if his actions are now considered improper, such was not clearly established when he denied Plaintiff's request to eat from the vegan menu.   As such, Defendant argues that he is entitled to qualified immunity. The undersigned agrees.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation.   *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).   They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated.   *Ibid.*   When government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

For a right to be clearly established there must exist "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point."  *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (citation omitted).  Court decisions examining matters at a "high level of generality" do not constitute clearly established law because such "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Ibid.* (citation omitted).  The plaintiff need not locate authority in which "the very action in question has previously been held unlawful," but "in light of pre-existing law the unlawfulness [of the defendant's actions] must be apparent."  *Ibid.* (citation omitted).  This does not require the plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Because Defendant has asserted a viable claim to qualified immunity, the burden shifts to Plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'"  *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *al-Kidd*, 563 U.S. at 741).

-13-

Plaintiff has failed to identify any authority holding, or even suggesting, that the approach employed by Defendant Leach in this case was considered improper or unlawful as of the date Leach acted.   Likewise, the Court has identified no such authority.   To the contrary, as recently as 2020, both this Court and the Sixth Circuit continued to approve of the approach employed by Defendant Leach in this matter.   *See Miles v. Michigan Department of Corrections*, 2020 WL 6121438 at *2-3 (6th Cir., Aug. 20, 2020); *O'Connor v. Leach*, 2020 WL 2187814 at *1 (W.D. Mich., May 6, 2020). Accordingly, the undersigned recommends that Defendant Leach is entitled to qualified immunity as to Plaintiff's First Amendment Free Exercise claim.

C.   RLUIPA

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.   42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden."   The Sixth Circuit, however, has concluded that the phrase "has the same meaning under RLUIPA as provided by the Supreme Court in its 'free exercise' decisions."   *Mitchell v. Schroeder*, 2022 WL 263212 at *4-5 (W.D. Mich., Jan. 28, 2022) (citations omitted).   Accordingly, a burden is substantial "where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places substantial pressure on an adherent to modify his behavior and to violate his beliefs."   *Id.* at *5 (citations omitted).   Likewise, a burden is less than "substantial" where it imposes merely an "inconvenience on religious

-14-

exercise." *Ibid.* (citations omitted).   The Court need not decide whether Defendant Leach's actions imposed a substantial burden on Plaintiff's religious exercise because Plaintiff has failed to assert this action against any defendant who can provide the relief he seeks.

Under RLUIPA, Plaintiff can only obtain injunctive relief.   *See Mitchell*, 2022 WL 263212 at *8-9.   Plaintiff seeks injunctive relief in this case, specifically an order requiring "defendant" to grant his request for an "alternative" religious diet that includes halal meat and dairy products.   As noted above, however, none of the defendants in this action possess the authority to approve such a request.   Only the MDOC Deputy Director possesses the authority to approve the specific accommodation Plaintiff requests.   Because Plaintiff has failed to assert this action against a defendant with the authority to grant the specific relief he requests, Defendant Leach is entitled to relief. *See, e.g., Hall v. Trump*, 2020 WL 1061885 at *3-5 (M.D. Tenn., Mar. 5, 2020) (to obtain injunctive relief, a plaintiff must bring an action against an individual "who ha[s] the power to provide the relief sought"); *Walker v. Scott*, 2015 WL 5450497 at *4 (C.D. Ill., Sept. 15, 2015) ("[a]s injunctive relief is the sole remedy available to a plaintiff under RLUIPA, the proper defendants are those with the responsibility to ensure that such relief is carried out"); *Wolf v. Tewalt*, 2021 WL 1093089 at *5 (D. Idaho, Mar. 22, 2021) (prisoner's RLUIPA claims dismissed as to defendants lacking the authority to grant the injunctive relief requested).   Accordingly, the undersigned recommends that Defendant Leach is entitled to summary judgment on Plaintiff's RLUIPA claim.

D.    Establishment Clause

The Establishment Clause of the First Amendment prohibits "the enactment of any law 'respecting an establishment of religion.'"  *Maye v. Klee*, 915 F.3d 1076, 1084 (6th Cir. 2019).   Thus, "one religious denomination cannot be officially preferred over another."  *Ibid.* (citation omitted).   An official violates the Establishment Clause when he "confers a privileged status on any particular religious sect or singles out a bona fide faith for disadvantageous treatment."  *Ibid.*   While Plaintiff has presented evidence that Defendant Leach took action that arguably "disadvantaged" him personally, Plaintiff has failed to demonstrate that Defendant Leach took action that preferred or disadvantaged one religious denomination over another, a failure that is fatal to his claim.  *See, e.g., Rains v. Washington*, 2020 WL 1815839 at (W.D. Mich., Apr. 10, 2020). Accordingly, the undersigned recommends that Defendant Leach is entitled to summary judgment on Plaintiff's Establishment Clause claim.

E.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011).   The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

Plaintiff's Equal Protection claim fails because he has failed to demonstrate that he has been treated differently from other similarly situated prisoners.   Specifically, Plaintiff has not presented evidence that other prisoners' requests for religious meal accommodation were granted by Defendant Leach despite having purchased or possessed foods which violated their stated religious requirements.   *See Rains*, 2020 WL 1815839 at *13-14 (an equal protection claim fails absent evidence that the plaintiff was treated differently to others who are similarly situated "in all relevant respects").   Accordingly, the undersigned recommends that as to Plaintiff's Equal Protection Claim, Defendant Leach is entitled to summary judgment.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 32) be granted and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to

appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 12, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

-18-