**FILED - KZ**
December 29, 2023 11:14 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
___ems___ Scanned by ES 12/29

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

FATHIREE ALI,

     Plaintiff,

vs

STEVE ADAMSON, DAVID LEACH,
and SHANE JACKSON

     Defendants.

_____/

Case No. 1:21-cv-71

Honorable Hala Y. Jarbou

Magistrate Phillip J. Green

FATHIREE ALI, #175762
In Pro Per
Saginaw Corr Facility
9625 Pierce Rd.
Freeland, MI 48623

_____/

JENIFER A. FOSTER
Attorney for Defendants
P.O. Box 30217
Lansing, MI 48909

PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
DECEMBER 12, 2023, REPORT & RECOMMENDATION (ECF No. 57)

Pursuant to 28 USC §636(b)(1)(C), Plaintiff, proceeding in pro se, submit

the following objections to the Magistrate Judge's findings and recommendations,

issued on December 12, 2023:

### SUMMARY ARGUMENT

A district court must conduct de novo review of the parts of a magistrate

judge's report and recommendation to which a party objects. 28 USC §636(b)(1) and

Fed.R.Civ.P 72(b)(3).

A Court's function is not to weigh the evidence and determine the truth of

the matter as asserted, but demonstrate whether there is a genuine issue for

trial. the relevant inquiries is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law. James Johnson v City of Ecorse, 137 F

Supp2d 866, 890 (2001).

1.

In deciding objections to the Magistrate Judge's Report and Recommendations, this Court have discretion to consider new material. See Muhammad v Close, 2009 US App LEXIS 29556, 2009 WL 8755520 (6th Cir. 2009)(citing with approval decision of Ninth and Fifth Circuits holding that "district court have the discretion to consider evidence presented for the first time in a party's objections to a Magistrate Judge's order); Bodman, v Dennis, 2013 US Dist LEXIS 79827, 2013 WL 2458383 (2013). Also see , Smith v Jackson, 2020 US Dist LEXIS 27839, 2020 818869 (2020)(the Magistrate Judge Act grant district courts the discretion to 'accept, reject, or modify, in whole or in part" the finding or recommendations of a Magistrate Judge and to "receive further evidence or recommit the matter to the Magistrate Judge with instructions." 28 USC §636(b)(1)(C).); Vercruyssee v Hoffner, 2020 US Dist LEXIS33430 2020 WL 948143 (2020); see Thomas v Am, 474 US 140, 149-52 (1985).

In addition, this case has unique circumstances, haunted by Covid, because Saginaw Corr. Facility prison administrators have quarantined 700 unit where Mr. Ali's resides. Whether by neglect or quarantine restrictions, the facility did not deliver the Magistrate's order until December 21, 2023. Likewise, it severely bars LEXIS research/shepard's and access to law material necessary to consult and object to the Magistrate's recommendation. Thus, the quarantine cripples Ali's ability to a full informed presentation of material facts and its applicable case law.

Because of these unforeseen and unique circumstances, the Court should consider and liberally decide Plaintiff's evidence and objections.

In analyzing Plaintiff's complaint; all allegations verified on personal knowledge should be considered in deciding objections to the magistrate judge's report and recommendation. See El Bey v Roop, 530 F3d 407,414 (6th Cir. 2008).

Plaintiff's showing must be sufficient for the court to hold that no

reasonable trier of fact could find other than for the moving party. Calederone v United States, 799 F2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it. Cockrel v Shelby County Sch Dist., 270 F3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v Cromartie, 526 US 541, 553 (1999).

## ARGUMENT 1
### PLAINTIFF OBJECTS TO THE MAGISTRATE'S RULING THAT HE HAD AN OPPORTUNITY TO CONDUCT DISCOVERY, AND AMENDMENT OF HIS CLAIMS.

Contrary to the Magistrate's ruling, Mr. Ali have not have a fair opportunity to explore records in the Defendants' possession to support his claims. Despite having filed a timely request upon Defendants pursuant to the procedure rules, Defendant refused to fairly disclosure and cooperate in discovery. Also, the Defendant refused to give notice and make accessible the deposition transcripts. Defendants argue that Ali has not sufficiently presented his claims, yet if true, it is through their bad faith and withholding of material evidence. Mr. Ali should be granted great latitude on his presentation of available evidence, or lack thereof.

Further, Plaintiff objects to the Magistrate's ruling which denied amendment and proper presentation of his claims.

## ARGUMENT 2
### PLAINTIFF OBJECTS TO THE MAGISTRATE JUDGE'S DISMISSAL OF DEFENDANT ADAMSON BECAUSE THE EVIDENCE DOES REFLECT THAT HE REGULATED ALI'S HALAAL DIET REQUEST, DENIED IT, AND THEN CONVERTED IT INTO A STANDARD VEGAN MENU DIET.

## Relevant Law and Argument

In Woodford v Ngo, the Supreme Court recognized that officials might devise

procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[] up all but the most skillful prisoners." 548 US 81, at 102 (2006). And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. Id. Cf. Ross v Blake, 578 US --, 136 SCt 1850, 1859-60 (2016). "An administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Report and Recommendation

In his report, the Magistrate ruled that Mr. Ali presented no evidence that "(1) [Adamson] was not authorized to approve or deny Plaintiff's request, but instead could only make a recommendation regarding such, and (2) that he recommended to Defendant Leach that Plaintiff's request for a special religious diet accommodation be granted." (ECF No. 57, PgID.375.

Objection #1
Plaintiff objects to the Magistrate report that he "did not present evidence that Adamson did anything to deny or impede other request he made for religious diet accommodations."

Objection #2
Plaintiff objects to the Magistrate's report which wrongly treated "his request for a halaal diet" to Adamson as a claim for a the MDOC's vegan diet accommodation. And thus any Ali did not assert any claims related to Adamson's denying or impeding other request for religious diet accommodations

While Jackson stood mute, both Adamson and Leach assert, they could neither "approve or deny request for the alternate menu." (ECF #33-4, PgID.175, ECF 33-8, Pg.ID.199). A reasonable juror could find that Defendants Jackson, Adamson and Leach did deny or thwart Ali's request for a halaal diet from the religious meal accommodation process, by failure to present it to the Deputy Director. See Ross supra, Woodford, supra.

4.

As shown through the evidence Adamson did receiv Ali's request for a *"halaal diet"*. See Plaintiff's Complaint @22-27 (R. 1, PgID.4-5); Ali's Kite Request, (R.33-7, PgID.196), Declaration of Fathiree Ali, pg. 2. Next, Adamson's actions reasonably demonstrate that he first thwart Ali's request with a denial because he knew that meat and dairy diet were not being offered to Muslim inmates. (Declaration of Fathiree Ali, pg. 3). It was *only after this decision to deny,* did Adamson proceed with a vegan menu interview. While Adamson assert that he has no authority to approve or deny an alternate diet, he did so at this juncture because he did not forward the "halaal diet" request to the Deputy Director. Instead, -- as the facts show -- Adamson recklessly -- without regard to Ali's rights -- made a decision to deny the request and convert it as a vegan menu request.

And still, record evidence reflects that during the interview Ali informed Adamson that none of the meals at Carson were adequate, reiterating that his belief requires a halaal meal with meat, chicken and dairy. Religious Meal Interview, Id. PgID.194. Again, Adamson ignored Ali's response for meat (i.e., alternate menu), recognized his sincerity and recommended a vegan diet to Defendant Leach.

The record evidence demonstrates that Mr. Ali's request was specific, it was for a "halaal", not vegan diet. Plaintiff version must be accepted as true. There is no ambiguity in Ali's Complaint (R.1, PgID.4, 5), kite, Ali's Deposition (R.33-5, PgID.179), nor even in his later response to why the meals at the facility were inadequate. (Id., PgID. 194 at #6). Besides, the failure "to provide and make available meals consistent with [his] belief." is strengthen in the grievance allegations where he identified each defendant by name. (Exhibit to Complaint, R.1). The evidence strongly suggest troubling factors in Adamson's version that he had no authority to approve or deny the alternate menu. A juror could possibly find that by not forwarding the request to the Deputy Director for

approval or denial, Adamson indeed regulated Ali's rights, made a "a decision" which took matters into his own hands, denied the request himself and gave Ali something else (i.e., a vegan diet). Evidence from the MDOC Religious Handbook confirm the need for meat with Ali's diet. See Plaintiff's Opposition to Defendant's Summary Judgment, Exhibit. A juror could reasonably conclude that Adamson's wanton denial was the ball breaker and he intentionally gave Ali something other that what he asked for. See Declaration of Fathiree Ali, pg 3. Likewise, a juror could find, as the evidence confirms that other MDOC chaplains have denied "alternate menu" request. See and take judicial notice of, Spearman v Michigan, 2018 US Dist LEXIS 85163 (the chaplain interviewed plaintiff, considered his request as an alternate for a vegan menu ... and concluded that plaintiff was not entitled to an alternate to the vegan menu, and then denied the vegan menu); and Martin v McKee, 2020 US Dist LEXIS 105635 (plaintiff is given a test by Chaplain Rink for a religious meal, even though he sought an alternate menu. Rink informs Martin that the MDOC did not have an alternate meal and neve intended to provide one for Muslims).

The problem faced here is that Adamson decided what he "believed" was best for Ali's religious practice. Instead of seeking clarity--even though the request was straightforward--he denied the request and proceeded with a vegan diet interview. Under the law, the Free Exercise Clause, is 'not limited to beliefs which are shared by all of the members of a religious sect." Holt v Hobbs, 135 SCt 853, 862-63 (2015).

It is immaterial as to what diet Adamson or Leach wanted or interpreted for Ali, the question turns on whether the impact of their regulation on Ali, not the centrality of those beliefs to canonical texts as interpreted by judges or prison officials. See Haight v Thompson, 763 F3d 554, 567 (6th Cir. 2014).

All in all, there is a dispute, a genuine issue of material fact as to

whether Adamson change of Ali's alternate menu request to a vegan request equates a denial, thus a denial of Ali's halaal diet which substantially burden Ali's practice of his sincerely held religious beliefs. Under Fed.R.Civ.P. 56(C)(1)(a), when there is a genuine issue of fact the trial court lacks jurisdiction and must allow a jury to decide. See Johnson v Jones, 515 US 304 (1995).

This Courts should reject the Magistrate's Report and Recommendation, and deny summary judgment for Defendant Adamson.

## ARGUMENT 3
PLAINTIFF OBJECTS TO THE MAGISTRATE'S RE-CHARACTERIZATION OF HIS VERSION OF THE FACTS, DISMISSAL OF EQUAL PROTECTION AND RLUIPA CLAIMS, AND GRANT OF QUALIFIED IMMUNITY TO DEFENDANT LEACH

## Objection #3
The Magistrate's acceptance of Adamson/Leach's interpretation of Ali's request as a vegan meal demonstrates a genuine factual dispute.

Contrary to the record evidence, the Magistrate minimizes Ali's version of a "halaal diet" request into a mere "religious meal accommodation," so as to give leniency or justify Adamson and Leach's reckless interpretation that Ali desired a vegan meal. The court is not to weigh the facts. Naturally, Adamson/Leach's dietary interpretation versus Ali's expressed halaal diet request--which neither sent to the Deputy Dir.--is a genuine factual dispute for the jury to decide.

## Objections #4
Plaintiff objects to Magistrate's grant of qualified immunity for Defendant Leach because the constitutional violation was clearly established.

The Magistrate wrongly determined that Defendant Leach's improper actions were not clearly established. The Magistrate observed that even though the MDOC policy did not require prisoners to abstain from foods that violate their religious belief prior to requesting access to the vegan menu, this requirement was Leach's interpretation of the policy. Leach justifies his improper conduct on grounds of immunity because his conduct was not clearly established. Even though it was not until 2021, did the Sixth Circuit in Ewing v Finco, case no.

7.

20-1012/1022, Order (6th Cir., Jan. 5, 2021), strike down this reasoning. (ECF #57, PgID.381-382), the law had long been clearly establish.

In 2013, the court in Borkholder v Lemmon, 983 FS 2d 1013 (ND Ill, 2013), clarify a similar situation with the Illinois Dept of Corrections, which long held Leach's conduct as improper. Like Ali, the DOC revoked a religious diet because the inmate purchased chicken-flavored ramen noodles--which he discarded--from the prison commissary. Like Ali, the defendants relied upon a DOC policy as justification for what occurred, even though the policy did not state that an inmate's religious diet will be revoked. Borkholder @ 1018. In deciding that the defendants failed to satisfy their burden, the court held that the mere fact that plaintiff purchased a product which he did not consume cannot serve as conclusive evidence that his beliefs are insincere. See Reed v Faulkner, 842 F2d 960, 963 (7th Cir., 1988)("It would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police."); see also Vinning-El v Evans, 657 F3d 591, 594 (7th Cir., 2011)(observing that "sincerity rather than orthodoxy is the touchstone' for protection of an inmate's religious beliefs)." Id. @1019.

As here, the defendants in Borkholder argued qualified immunity because plaintiff could not point to no case that would establish the rights at issue. The court opine that relevant cases dating back to 1998, including Reed and Koger v Bryan, 523 F3d 789, 800 (7th Cir., 2008), outline an inmate's right to a religious diet, and describe the impropriety of prison officials acting as "religious police" by forfeiting an inmate's religious rights whenever he is observed 'backsliding'. These cases, as well as Vinning-El, Nelson, and Mustafa, would have put a reasonable prison official on notice that a religious diet could not be revoked simply because he purchased chicken-flavored ramen noodles. Id. 1020.

Also, in an earlier case, Isbell v Ryan, 2011 US Dist LEXIS 140469; 2011 WL 6050337 (2011), an inmate's request for a religious diet was denied in light of the inmate's inconsistent history and behavior, which include ... discretionary food purchases that were inconsistent with the requested diet. Plaintiff dispute the purchases (ramen noodles and meat sausage), arguing that dietary restrictions are to be followed once an inmate has been approved for the religious diet. The court held that while plaintiff's conduct can be considered in determining the sincerity of his religious beliefs ... the cited conduct is insufficient to establish insecurity of his belief as a matter of law. Notably, the court in Isbell observed that the DOC had not yet approved plaintiff for any meal, yet denied a religious diet without notice of any dietary regulations or restrictions about commissary purchases.

Here, as in Isbell, Ali was not put on notice about his store purchases, especially since others were approved. Leach's actions held no penological interest since: 1) it was not authorized by policy, (ECF #57, PgID.381), 2) Adamson had recommended approval of the vegan diet after his investigation of Ali's commissary purchases, (ECF No. 32, PgID.143); and 3) unit correction officers qualified Ali's sincere beliefs. (ECF. #33-7, PgID.191).

Further, Leach's penological interest is irrational, wanton, arbitrary and motivated by ill-will, because he granted religious diets for Daw'ud ibn Clark and Johnny Jenkins, despite their commissary purchases. See Declarations of ibn Clark and Jenkins. Likewise, he did the same for the affiants--Charles Conway, Raheem Muhammad and Quentin Betty--offered in Ewing supra. This court may take judicial notice of its own records and the records of other courts. See also, Fed.R.Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy can not reasonably be questioned).

Lastly, the Complaint show evidence that due to the cross-contamination and

9.

inadequate nutrition available from the main food line Ali suffered, he was hungry, dizzy and suffered both physically and spiritually. (ECF No. 1, PgID 5 - 24-25), Declaration of Fathiree Ali, pg. 3. Since the Sixth Circuit held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." Colvin v Carsuo, 605 F3d 282, 290 (6th Cir. 2010, Leach should have reasonably known that his denials, without any alternative and adequate diet, that his actions were wrong and substantially burden Ali's religious practice.

The evidence points to defeat of Leach's feeble contentions as to why he first reviewed and denied Ali's halal diet request, and subsequently denied the vegan menu recommendation, so as to ward off any more talk of an alternate menu. As a result of the evidence and cases presented, Leach should be denied qualified immunity. Mr. Ali ask that the Court reject the Magistrate Report and Recommendation, and permit him to proceed with his claims.

Objection #5
    The Magistrate wrongly denied Plaintiff's RLUIPA claims.

The Report and Recommendation contends that "[o]nly the MDOC Deputy Director possess the authority to approve the specific accommodation Plaintiff request." (ECF #57, PgID.385). Ali submits that case law in *Spearman, Onum, and Martin* demonstrate an approved custom and practice in addition to the MDOC policy that persons other than the Deputy Director can approve or deny Plaintiff's request. Since this policy is not set in stone, arbitrarily enforced, Ali's RLUIPA claims were improperly denied.

Objection #6
    Plaintiff objects to Report that his Equal Protection claim fails to show that he has been treated differently from other similarly situated prisoners.

The Magistrate opine that "Plaintiff has not presented evidence that other prisoners' request for religious meal accommodation were granted by Defendant

10.

Leach despite their having purchased or possessed foods which violated their stated religious requirements. (ECF #57, PgID.387).

First, as presented earlier, evidence from Clark, Jenkins, and the request to take judicial notice of affiants Conway, Muhammad, and Betty from *Ewing, supra,* confirm that Leach granted religious meal accommodations even though these inmates made store purchases contrary to their religious beliefs. Secondly, because Leach oversees all religious meal request for MDOC prisons, it is irrelevant as to which prison the inmate witnesses were at when they were approved for their diet.

In light of the evidence, Fed.R.Civ.P. 56(C)(1)(a), and argument presented, this Court should reject the Magistrate's Report, and deny Defendants' request for summary judgment, and Ali permit to proceed with his Equal Protection Claim.

CONCLUSION

This case is riddled with genuine issues as to many material factual contradictions between the Plaintiff and Defendants which the law requires a jury to decide. Based on all the proofs, pleadings, as well as the following disputes:

* the evidence demonstrates that Ali made a request for a halaal diet which the defendants denied; but the defendants disagree, and claim they interpreted the request for a vegan menu;

* the evidence demonstrate that all Defendants had reasonable information that Ali only desired a halaal diet, the grievance further explained their wrong actions; yet they did not fix and continued to act with reckless disregard and substantially burden Ali's religious exercise

* the record evidence demonstrates that Ali made a request for a halaal diet which the defendants withheld that request from the Deputy Director's, review, the defendants disagree;

* the record evidence demonstrates that Ali's kite request and Religious Meal Interview response at #6, was sufficient to inform both Adamson and Leach that he sought a halaal diet; but Leach disagrees,

* Leach contends that Ali store purchases were inconsistent with his religious belief. Ali disagrees. The record evidence demonstrates that Ali's did not consume any unlawful foods, he discarded the ramen noodles flavored packets, bartered the meat and all other foods were lawful under his religious practice. Likewise, Adamson considered Ali's store purchases okay and recommended approval for a vegan diet;

11.

* the record evidence demonstrates that Adamson and unit corrections officers
  qualified Ali's beliefs as sincerely held; but, Leach disagrees, and claims
  that Ali's belief is not sincere;

* the record evidence demonstrates that both Adamson and Leach assertion that
  they can neither approve or deny an alternate menu request. Ali disagrees,
  by proofs of similar cases which reflect their making decisions where they
  denied alternate menu diets;

* Leach aver that he denied the religious diet based on Ali's store
  purchases. Ali disagrees; the record evidence demonstrates that in years
  prior to Ali's purchases, other inmates were approved by Leach (for a
  religious diet), even though they made store purchases which conflict with
  their religious beliefs. Leach's vegan meal denial was arbitrary and did
  not support any reasonable penological interest;

* the record evidence demonstrates that Leach conflated the policy dictates,
  did not give notice to new religious meal applicants that their store
  purchases would be held against their religious meal request. Plaintiff
  contend that such practice violates basic fairness, and that Leach's
  improper conduct was clearly established as unlawful;

* Defendants contend that Carson's meals are adequate. Ali disagrees, through
  record evidence which demonstrates that, as a result of Ali's halaal diet
  denial, he had to forgo meals due to cross-contamination and suffers from
  inadequate nutrition/calories, which substantially burden him with
  dizziness, anxiety, weight loss, stress, punishment, and loss of spiritual
  blessings;

* the record evidence demonstrate that Jackson and Adamson approved Christian
  events--One Day with God and Kyrex-- with meals out of facility funds,
  though denied Muslim meals.

* the record evidence demonstrates that a Muslim must eat a halaal diet,
  which requires the Muslim to consume meat, dairy, chicken, eggs, fish,
  dates, lamb and cheese, as part of their daily diet.

* the record evidence demonstrates that Adamson regulated Ali's alternate
  menu request by conversion into a vegan diet. Not justified by reasonable
  penological interest;

* the record evidence demonstrates that at three breakfast meals offered at
  Carson each week, there are no meat substitutes for vegetarian diets. Thus
  the cross-contamination causes the entire breakfast meals as haraam
  (unlawful), lack adequate nutrition and calories for Ali, unlike, other
  similarly situation prisoners.

, the Magistrate's report and recommendation should be rejected. Specifically:

In light of the evidence presented, in keeping with this nation's

commitment to justice, and in response to the principles embodied in the

12.

Constitution, a jury could find for the plaintiff based on the facts and the Court

should reject the Magistrate's report and recommendation and deny Defendant's

motion for summary judgment.

Respectfully submitted,

DATED: December 26, 2023                                    FATHIREE ALI

## CERTIFICATE OF SERVICE

Plaintiff, Fathiree Ali, hereby certifies and declare under the penalty of
perjury that the foregoing is true and correct, that on the 26th day of December
2023, he served a copy of  PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
DECEMBER 12, 2023, REPORT AND RECOMMENDATION  on Jennifer A. Foster, Assistant
Michigan Attorney General, at 525 West Ottawa St., 4th Fl, P.O. Box 30217,
Lansing, MI 48909.

DATED:  December 26, 2023                              FATHIREE ALI, #175762

## DECLARATION OF MAILING

Plaintiff Fathiree Ali, declare under the penalty of perjury that the
foregoing is true and correct, that on the 26th day of December, 2023, he handed
to the prison counselor an original copy of  PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S DECEMBER 12, 2023, REPORT AND RECOMMENDATION  to be mailed to
the United States Western District Court.

DATED:  December 26, 2023                              FATHIREE ALI, #175762

## VERIFICATION

Pursuant to 28 USC §1746, I verify under the penalty of perjury that the
facts stated herein of  PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S DECEMBER
12, 2023, REPORT AND RECOMMENDATION  are true to my knowledge.

DATED:  December 26, 2023                              FATHIREE ALI, #175762

FATHIREE ALI, #175762
Saginaw Correctional Facility
9625 Pierce Rd.
Freeland, MI 48623



US POSTAGE ᴹᴾ PITNEY BOWES

ZIP 48623 $ 001.83⁰
02 4W
0000386157 DEC 26. 2023

United States District Court
Attn: Clerk of the Court
107 Federal Bldg.
410 W. Michigan Ave.
Kalamazoo, MI 49007



WED 27 DEC 2023 PM