UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI,

    Plaintiff,

v.

Case No. 1:21-cv-71

Hon. Hala Y. Jarbou

STEVE ADAMSON, et al.,

    Defendants.
_____/

# OPINION

Plaintiff Fathiree Ali, a state prisoner, brings this civil action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, against several Michigan Department of Corrections ("MDOC") employees. Specifically, he claims that Defendants Steve Adamson, David Leach, and Shane Jackson violated his First Amendment Free Exercise right, his Fourteenth Amendment right to Equal Protection, and RLUIPA when they denied his request for a halal diet. Ali also claims that Defendants' actions violated the First Amendment's Establishment Clause.

On December 12, 2023, Magistrate Judge Phillip J. Green issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants' motion for summary judgment (ECF No. 32) and dismiss the case (ECF No. 57). Before the Court are Ali's objections to the R&R (ECF No. 60).

## I. STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject,

or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Proper objections require specificity. "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Vague, conclusory objections are insufficient, as are mere restatements of a plaintiff's complaints. *See id.* Because Ali is proceeding pro se, this Court will construe his objections liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. BACKGROUND

Ali is a devout Muslim whose faith requires him to consume only "halal" food—food prepared in accordance with Islamic law. The MDOC offers a universal religious meal that is vegan, kosher, and halal. If a prisoner believes this meal does not accommodate his particular religious needs, he may request an alternative religious menu. Both diets must be approved, albeit by different people—the universal religious meal must be approved by the Special Activities Coordinator ("SAC") while any alternative menu must be approved by the MDOC Deputy Director.

To Ali, a halal diet is one that must include halal meat; a vegetarian or vegan meal is insufficient, even though it may be sufficient for other Muslims. In August 2017, Ali requested a religious meal accommodation. Procedurally, Ali believed he first needed to request to be put on the prison's universal religious diet program, the diet approved by the SAC, Defendant Leach. He believed he could then later request a separate accommodation to include halal meat.

To process his religious meal accommodation request, Defendant Adamson, the chaplain, first interviewed Ali and administered a "faith test." Adamson forwarded to Leach his recommendation that Ali's request be granted and that he be placed on the universal religious diet.

2

Leach reached a different conclusion and denied the request. Leach asserts that he denied Ali's request because Ali had purchased, prior to his religious accommodation request, food from the prison commissary that conflicted with the religious accommodations he was requesting.

The magistrate judge recommended granting summary judgment to each of the three remaining Defendants. For Defendant Jackson, the magistrate judge concluded that Ali failed to present any evidence of Jackson's involvement in the events giving rise to the complaint. For Defendant Adamson, the magistrate judge concluded that Ali presented no evidence that Adamson did anything to impede or deny the only request properly before the court—the request for the universal religious diet. Finally, for Defendant Leach, the magistrate judge concluded that while Ali may have adduced sufficient evidence to put into question whether Leach violated his Free Exercise rights, Leach was nevertheless protected by qualified immunity. The magistrate judge also recommended that Leach be granted summary judgment on Ali's remaining claims (RLUIPA, Equal Protection, and Establishment Clause) because Leach is an improper defendant under RLUIPA and Ali produced no evidence that Leach treated him differently than other similarly situated prisoners or otherwise favored one religion over another.

### III. ALI'S OBJECTIONS TO THE R&R

Ali lodges several objections to the R&R, some generally applicable and some specific to Defendants Adamson and Leach. Note, Ali makes no objection to the R&R's recommendations related to Defendant Jackson. For the reasons herein, the Court will overrule each of Ali's objections.

#### A. General Case Management Objections

Ali first makes two broad objections related to some case management aspects of this action, which he styles "Argument 1." Several of the magistrate judge's recommendations relate to Ali's failure to adduce sufficient evidence despite a full and fair opportunity to participate in

3

discovery. Ali objects to this conclusion, arguing that Defendants refused to participate in discovery and withheld material evidence. Ali also objects to an earlier ruling by the magistrate judge denying Ali's motion to amend his complaint. Although the objections are combined, the Court will address them separately.

### 1. Discovery

Ali previously filed a motion to compel following the close of discovery (ECF No. 31) which the magistrate judge denied on October 12, 2023 (ECF No. 40). In his objection to the R&R, Ali makes no new discovery-related arguments and points to no specific discovery requests. Thus, the Court will construe his objection as a motion for reconsideration of a nondispositive order under Federal Rule of Civil Procedure 72(a).

Rule 72(a) requires Courts to review for clear error any nondispositive order timely objected to. Fed R. Civ P. 72(a). To be timely, a party must object within fourteen days after being served with a copy of the order. *Id.* Even allowing for a liberal prison mailbox rule, the time for Ali to file his objection has long passed. This alone is sufficient reason to overrule Ali's objection. *See, e.g.*, *Green v. Bell Hendersonville, LLC*, No. 3:19-CV-0833, 2020 WL 619842, at *1 (M.D. Tenn. Feb. 10, 2020) (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("the lenient treatment generally accorded pro se litigants has limits"); *Greer v. Home Realty Co. of Memphis, Inc.*, No. 2:07-CV-02639-SHM, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010) ("Although district courts may liberally construe the federal and local rules for *pro se* litigants, even *pro se* litigants are obligated to follow these rules.")).

Regardless, Ali points to no clear error in the magistrate judge's October 12, 2023 order that would warrant modification. The magistrate judge concluded that Ali's motion was untimely per the Case Management Order ("CMO") (ECF No. 23), that Ali failed to articulate good cause for the delay, and that Ali failed to attach or sufficiently describe the discovery requests in dispute,

4

as required by Local Rule of Civil Procedure 7.1(b).  Ali clearly disagrees with the October 12, 2023 order, but he offers no case law, evidence, or argument as to why this Court should modify it.  The Court thus declines to do so.

### 2. Amendment

Ali filed a motion for leave to amend his complaint on August 10, 2023 (ECF No. 29), eighty days after the deadline set in the CMO.  (*See* CMO ¶ 3.)  The magistrate judge denied this motion in his October 12, 2023 order, the same order in which he denied Ali's motion to compel.  Ali's objection to this portion of the order fails for similar reasons.

First, Ali's objection is again untimely under Federal Rule 72(a).  Second, Ali identifies no clear error for which the order should be disturbed.  The magistrate judge rejected Ali's motion to amend because Ali failed to show good cause, as required by Federal Rule of Civil Procedure 16.  The magistrate judge also concluded that any amendment would be futile.  In his present objection, Ali addresses neither conclusion.  Thus, the Court will reject Ali's objection to the magistrate judge's order denying his motion to amend the complaint.

In summary, the Court will overrule both of Ali's general objections.

**B. Objections #2 and #3—Vegan vs. Halal Accommodation**

At bottom, Ali seeks in this action a religious diet accommodation that includes halal meat.  Defendants contend that Ali made this request—a diet including halal meat rather than the universal religious meal diet—for the first time in this lawsuit.  The magistrate judge agreed.  But Ali objects, arguing that his requests, dating back to 2017, specifically requested his version of a halal diet.  Thus, Ali argues that Defendants Adamson and Leach improperly "converted" his request for a halal accommodation to a request for a vegan accommodation.  Ali labels these objections as objections #2 and #3.

Ali contends that "[t]he record evidence demonstrates that [his] request was specific, it was for a 'halaal' diet, not vegan diet." (Pl.'s Objs. 5, ECF No. 60.) But there appears to be a fundamental disagreement as to what is and is not halal. The MDOC, and indeed other Muslims according to Ali (Pl.'s Resp. to Def.'s Mot. for Summ. J. 4, ECF No. 53), interpret the universal religious diet offered by MDOC as a halal diet. The universal religious diet also happens to be vegan, but vegan and halal are not mutually exclusive. Conversely, Ali believes that a vegan diet and a halal diet *are* mutually exclusive. The parties appear to have used the same term to mean different things.

Ali points specifically to his "kite" requesting a religious meal accommodation as evidence clearly establishing that he sought a non-vegan halal diet from the beginning. (*See generally* Accommodation Interview and Kite, ECF No. 33-7.) A review of the kite suggests otherwise. In the religious meal interview questions administered by Adamson and attached to the kite, Ali repeatedly referred to a halal diet's exclusion of meat not "handled in accordance to Islamic tene[]ts." (*Id.* at 3-4.) But nowhere did Ali refer to a halal diet as one *requiring* compliant meat. In other words, based on Ali's responses to Adamson's interview questions, one could reasonably conclude that a diet excluding non-compliant meat could be considered halal and could conform with Ali's request.

To remove any remaining doubt, the kite also specifically included a declaration by Ali that he understood the policies of the Religious Meal Program, including Policy Directive ("PD") 05.03.150. This PD provides that the MDOC "offers a vegan menu to meet the religious dietary needs of prisoners" and that the "Vegan menu shall comply with Kosher and Halal religious tenets." (PD 05.03.150 ¶ OO, ECF No. 33-3.) It further states that "[a] prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu[,]"

6

which must be "developed and provided only with approval of the Deputy Director[.]" *Id.* Ali was thus on notice that the accommodation he was seeking was defined as one where vegan was not mutually exclusive with halal.

The evidence does not support Ali's contention that Defendants Adamson and Leach improperly converted Ali's request for a halal diet into a request for a vegan diet. Instead, the evidence establishes that Ali submitted a request for the MDOC's definition of a halal diet—a diet that could also be vegan. Ali's objections #2 and #3 will thus be overruled.

### C. Objection #1—Defendant Adamson's Approval of Ali's Request

Ali makes one additional objection related to Defendant Adamson. Properly framed, Ali's "Objection #1" related to Adamson falls away. The magistrate judge concluded that Adamson submitted sufficient evidence establishing that Adamson recommended *approval* of Ali's request, not denial. (Adamson Aff. ¶¶ 7-9, ECF No. 33-8.) Ali objects to this conclusion, but his argument rests on viewing Adamson's "conversion" of Ali's request as a denial. In other words, to Ali, Adamson's nominal recommendation that Ali's request for the universal religious diet be approved did not cure the initial violation of Adamson's "improper conversion." But this Court disagrees with Ali's contention that Adamson converted the request. Thus, Adamson did what Ali requested—he recommended approval of the universal religious diet that Ali initially sought. Without evidence to the contrary, Ali's objection will be overruled. Ali has failed to establish that Defendant Adamson in any way impeded his religious accommodation request, and thus summary judgment for Adamson is appropriate.

### D. Objections Related to Defendant Leach

Ali makes two additional objections related to Leach. Objection #4 relates to the magistrate judge's conclusion that Leach is protected by qualified immunity for Ali's Free Exercise claim. Objection #5 relates to Ali's Equal Protection claim.

7

### 1. "Objection #4"—Qualified Immunity

The magistrate judge decided Ali's Free Exercise claim against Leach on qualified immunity grounds. The Sixth Circuit "follows a two-tiered inquiry to determine if an officer is entitle to qualified immunity." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (internal quotation marks omitted). First, the court "determine[s] if the facts alleged make out a violation of a constitutional right." *Id.* Second, the court "ask[s] if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* A court may resolve the two steps in any order. "If either one is not satisfied, qualified immunity will shield the officer from civil damages." *Id.*

Leach denied Ali's request for the universal religious meal because Ali had purchased, prior to his accommodation request, items from the commissary that conflicted with his stated religious requirements. At the time of Leach's denial, courts in the Sixth Circuit had routinely upheld religious accommodation denials in such circumstances. *See, e.g.*, *Miles v. Mich. Dep't of Corrs.*, No. 19-2218, 2020 WL 6121438, at *2-3 (6th Cir. Aug. 20, 2020) (finding no Free Exercise or RLUIPA violation where the MDOC denied a prisoner's religious accommodation request because he had purchased non-conforming products from the commissary prior to his request); *Swansbrough v. Martin*, No. 1:14-CV-1246, 2017 WL 64917, at *2 (W.D. Mich. Jan. 6, 2017) (same). However, the Sixth Circuit has since cast doubt on this approach. In an unpublished opinion, the Sixth Circuit noted, "there is no dispute that a prisoner, once approved for religious meals, is prohibited from possessing food items forbidden by the teachings of the prisoner's religion," but questioned the reasonableness of a denial where the prisoner "had yet to seek approval for religious meals when they purchased non-compliant food items." *Ewing v. Finco*, Nos. 20-1012/20-1022, order at 5 (6th Cir. Jan. 5, 2021).

8

The magistrate judge did not reach a conclusion as to whether Leach's alleged actions violated Ali's Free Exercise rights; however, he concluded that even if they did, Leach is nevertheless protected by qualified immunity because his actions would not have been considered violative *at the time*. In other words, Ali failed at the "clearly established" step of the qualified immunity analysis.

Ali objects to this conclusion, arguing that "the law had long been clearly establish[ed]." (Pl.'s Objs. 8.) To support his objection, Ali cites several out-of-circuit cases including *Borkholder v. Lemmon*, 983 F. Supp. 2d 1013 (N.D. Ind. 2013); *Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988); *Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011); and *Isbell v. Ryan*, No. CV 11-0391-PHX-JAT, 2011 WL 6050337 (D. Ariz. Dec. 6, 2011). These cases are inapposite. As the Sixth Circuit has observed, "our sister circuits' precedents are usually irrelevant to the 'clearly established' inquiry." *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020). An exception is made only for "'extraordinary cases' where out-of-circuit decisions 'both point unmistakably to' a holding and are '*so clearly*' foreshadowed by applicable direct authority as to leave *no doubt*' regarding that holding." *Id.* (quoting *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988)).

Ali has failed to explain how this is the sort of "extraordinary case" where out-of-circuit decisions are relevant to the clearly established inquiry. Indeed, the Sixth Circuit had approved of the MDOC's approach until as recently as 2020. *See Miles*, 2020 WL 6121438, at *2-3. Thus, "applicable direct authority" at the time of Leach's actions in October 2017 pointed in the opposite direction—denying a religious meal accommodation request based on prior conflicting purchases was not considered violative of a prisoner's Free Exercise rights. Ali's qualified immunity objection will thus be overruled.

### 2. "Objection #6"—Equal Protection

The magistrate judge found that Ali failed to present evidence that Leach had granted other prisoners' religious meal accommodation requests despite conflicting food purchases or possessions. Thus, the magistrate judge concluded that Ali has failed to substantiate his "class-of-one" Equal Protection claim. Ali objects, arguing that affidavits from other prisoners demonstrate that Leach did treat Ali differently from other similarly situated prisoners, *i.e.*, Muslim prisoners who were approved a religious diet despite prior conflicting food purchases.

Ali points to two affidavits which he attached to his summary judgment motion and asks this Court to take judicial notice of three affidavits which were submitted by the parties in the *Ewing* litigation. As an initial matter, affidavits submitted as evidence in another case are not the sort of facts which this Court may take judicial notice of. Fed. R. Evid. 201; *see also, e.g.*, *Reaves v. Int'l Paper Co. Long-Term Disability Plan*, No. 07-2168 M1/P, 2008 WL 2437574, at *2 (W.D. Tenn. June 13, 2008). The contents of these affidavits are neither generally known within the territorial jurisdiction of the trial court nor capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Fed. R. Evid. 201(b)(1), (2). It may be appropriate for this Court to take judicial notice of the *fact* that the affidavits were filed, *see Reaves*, 2008 WL 2437574, at *2, but Ali is asking the Court to take notice of the *content* of the affidavits. That is not an appropriate application of Federal Rule of Evidence 201(b). *Id.* The Court thus declines to take judicial notice of the *Ewing* affidavits.

For the two affidavits properly before this Court, only one could potentially substantiate Ali's claim. First, Ali's reliance on the affidavit of Johnny Jenkins is misplaced because that affidavit does not relate to Leach. (Jenkins Aff. ¶ 3, ECF No. 52-2.) A plaintiff in a § 1983 suit must prove "that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Thus, Ali cannot use the

10

affidavit of another prisoner whose request was approved by another government official to show that this particular prisoner, Ali, was treated differently by this particular defendant, Leach.

That leaves the affidavit of Daw'ud ibn Clark. Unlike the Jenkins affidavit, this affidavit does specifically mention Leach. (Clark Aff. ¶ 8.) Clark's affidavit indicates that he was eventually approved for the universal religious diet, despite having previously purchased non-conforming foods. (*Id.* ¶ 6.) But the affidavit also indicates that Clark's request was initially denied in 2014 and that it was only ultimately approved after he reapplied in 2015. (*Id.* ¶¶ 8-9.) The affidavit offers no clues as to why Clark's initial request was denied or when he purchased non-conforming foods. But these are the critical questions that need to be answered in order to evaluate Ali's class-of-one Equal Protection claim. In other words, Ali has not provided sufficient evidence to support the conclusion that he is similarly situated to affiant Clark in all relevant respects. *See Tree of Life Christian Sch v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018). As such, Ali's equal protection objection will be overruled.

### E. "Objection #5"—RLUIPA

A plaintiff can only obtain prospective relief under RLUIPA. *See Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("RLUIPA does not permit money damages against state prison officials[.]"); *see also Mitchell v. Schroeder*, No. 2:21-CV-109, 2022 WL 263212, at *8-9 (W.D. Mich. Jan. 28, 2022). Ali is seeking such prospective relief—he seeks an order requiring Defendants to grant his request for an alternative religious diet that includes halal meat. However, the magistrate judge concluded that Ali failed to name a proper defendant. The proper defendants in an action for injunctive relief "are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue." *Hall v. Trump*, No. 3:19-CV-00628, 2020 WL 1061885, at *3 (M.D. Tenn. Mar. 5, 2020) (discussing *Ex parte Young*, 209 U.S. 123, 157 (1908) and quoting *Taafe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550, at

11

\*5 (S.D. Ohio Apr. 29, 2016)). Thus, the R&R recommends dismissal of Ali's RLUIPA claim because neither Leach, nor Adamson, nor Jackson has the power to authorize Ali's requested relief—that relief can only come from the MDOC Deputy Director. (*See* PD 05.03.150 ¶ OO.)

Ali objects, arguing that this policy "is not set in stone" and that it is "arbitrarily enforced" based on three cases, *Spearman v. Michigan*, No 1:18-CV-463, 2018 WL 2315786 (W.D. Mich. May 22, 2018); *Orum v. Michigan Department of Corrections*, No. 2-15-CV-00109, 2019 WL 2076996 (W.D. Mich. Apr. 8, 2019); and *Martin v. McKee*, No 2:18-CV-00066, 2020 WL 3259524 (W.D. Mich. May 26, 2020). None is convincing. In *Spearman*, for example, the plaintiff submitted religious accommodation requests directly to the MDOC Deputy Director without going through lower-level prison officials first. *Spearman*, 2018 WL 2315786, at \*4. The requests were denied, in part because the plaintiff should have sent his request to the warden first. *Id.*

Ali takes this to mean that the warden had the power to approve the plaintiff's request, and thus that the MDOC policy requiring deputy director approval is selectively enforced. Ali is mistaken. An administrative process that involves lower-level employees screening a request before sending it on to the ultimate decision maker is unremarkable. It certainly does not mean that lower-level employees have the decision-making authority within the meaning of the MDOC policy. In fact, the plaintiff in *Spearman* did what Ali failed to do—he named *both* the lower-level employees involved in screening other requests *and* the Deputy Director who had ultimate authority to issue the relief he sought. *Id.* at \*1.

Ali's other cited cases suffer from similar flaws. They also involve suits naming the Deputy Director and thus do not involve the incorrect defendant issue Ali faces here. Ali's objection as to his RLUIPA claim will be overruled.

## IV. CONCLUSION

None of Ali's objections convince this Court to reach a different conclusion than that reached by the magistrate judge. This Court also agrees with the portions of the R&R that Ali did not object to. To summarize, Ali has failed to establish a genuine dispute of material fact as to his Free Exercise, Establishment Clause, and Equal Protection claims against all remaining Defendants. He has also failed to name a proper defendant for his RLUIPA claim. As such, the Court will grant Defendants' summary judgment motion and terminate the case.

An order will enter consistent with this Opinion.

Dated: January 25, 2024  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE